NATHANIEL B. CURTISS, Appellant, *v.* WARRICK MARTIN, who sues for the use of Wilshire Scott Courtney and Springer Harbaugh, Appellee.

APPEAL FROM MARSHALL.

It is not erroneous to sustain a demurrer to a special plea, or to strike it from the files, if the same end can be attained under the plea of the general issue, filed in the same case.

Where a demurrer is sustained to special pleas, because they only amount to the general issue, whether they did or not, is immaterial, if the facts alleged in them could be given in evidence under that plea; and unless the bill of exceptions shows to the contrary, it will be presumed that the evidence received was admitted under the general issue.

Where a commission issues to Jasper E. Brady, to take the testimony of J. Gardner Coffin, if he signs it, J. E. Brady, commissioner, and certifies that he has executed the commission by taking the deposition of J. G. Coffin, the identity of the parties will be presumed.

A letter from the drawer of a bill from which a promise to the holder to pay the bill may be implied, is proper evidence, as showing a waiver, for omission to present the bill for acceptance or payment.

The affidavit of a security for costs, may be read to the court, as laying a foundation for an objection to the admission of the answer of a plaintiff to a bill of discovery, which is offered as evidence to the jury.

Admissions made by the owner of a bill or note, are admissible as evidence against a purchaser after maturity. And the evidence of a plaintiff, upon bill of discovery, who sues for another, as to any matter which existed before he parted with the bill, may be read in evidence.

The purchaser of an overdue bill or note, takes it subject to all infirmities and objections, and at his peril.

Instructions which present the same propositions of law, in nearly the same terms, need not all be given.

Curtiss *v.* Martin, use, etc.

It is a proper question for a jury to determine, whether the presentment of a bill has been waived.

If a drawer of a bill deposits a particular kind of funds with the drawee, to be disposed of, and have the proceeds applied to meet the payment of the bill when it becomes due, it may be considered by the jury as evidence, with other circumstances, as to whether a waiver has been made or not.

A subsequent payment of money may be a waiver of presentment.

A party may show any sufficient excuse for the want of dilligence, in making protest for non-acceptance and non-payment.

The acceptance of a less sum, in payment, than that which is due, is not a satisfaction of the whole debt; unless it be in compromise of a controverted claim, or from a debtor in failing circumstances.

The holder of a note without suspicion of bad faith, is presumed to be the legal owner.

THIS suit was commenced in the Circuit Court of Peoria county, on the 15th day of October, 1853, upon two bills of exchange, which are as follows :

$4,000.                                                          No. 1275.

COLUMBUS, OHIO, September, 1st, 1847.

Four months after date, pay to the order of Messrs. Warrick Martin & Co., four thousand dollars $\overline{100}$, value received, and charge the same to account of

Your Obdt. Servant,                          N. B. CURTISS.

To E. PLATT, ESQ., Cashr.

Leather Manufacturers' Bank, New York.

$5,000.                                                          No. 1276.

COLUMBUS, OHIO, Sept. 10th, 1847.

Four months after date, pay to the order. of Messrs. Warrick Martin & Co., five thousand dollars, value received, and charge the same to account of

Your Obdt. Servant,                          N. B. CURTISS.

To E. PLATT, ESQ., Cashr.

Leather Manufacturers' Bank, New York.

The declaration contains five counts on each of the bills.

The first count upon the first bill describes the bill, and contains the following averments: 1st, That bill was duly presented for payment at maturity, which was refused; 2nd, That it was duly protested for non-payment; 3rd, That defendant was duly notified of presentment and non-payment.

The second count is upon the second bill, and contains the same averments as the first count.

The third count is upon the first bill, and avers: 1st, Presentment to drawee, and refusal to pay; 2nd, That defendant had not, at any time, funds in the hands of the drawee; 3rd, Drawee had not received any consideration from defendant for the acceptance or payment by him of said bill; 4th, Defendant sustained no damage by reason of his not having notice of non-payment.

The fourth count is upon the second bill, and contains the same averments as the third count.

The fifth count is upon the first bill, and contains the following averments: 1st, That when the bill was drawn, and at its maturity on the 4th of January, 1848, plaintiffs were ready to present the bill to the drawee for acceptance and payment, and to demand acceptance of said bill, and payment of the money, and would have done so, but defendant requested the plaintiff not to present the same for acceptance and payment, and dispensed with and discharged the plaintiffs from the presentment of the bill for acceptance and payment.

The sixth count is upon the second bill, and contains the same averments as the fifth count.

The seventh count contains the common count, for money lent and advanced, and paid, laid out and expended; money had and received by defendant for the use of the plaintiff.

The eighth count is upon an account stated.

The ninth count is upon the first bill, and contains the following averments: That at the time of making the bill, it was understood and agreed between the plaintiff and defendant, that the bill should not be presented to the drawee for acceptance or payment, but that the defendant should, at or before the maturity of the bill, pay the same to the plaintiff. That the defendant did not pay, and therefore became liable, and agreed to pay, etc.

The tenth count is upon the second bill, and contains the following averments: That at the time of making the bill, it was agreed between the plaintiff and defendant that the bill should not be presented to the drawee for acceptance or payment, but that defendant, before the maturity of the bill, would furnish and place in the hands of the plaintiffs, funds to meet and pay the bill at maturity. That defendant did not do so, and therefore became liable, and agreed to pay, etc.

The following pleas were filed 18th September, 1854:

1st. *Nil debet* to the whole declaration. Issue to the country.

2nd. Set-off, $15,000 for goods, wares, etc., sold and delivered; money lent and advanced, and paid, laid out and expended; money had and received; money due and owing from the plaintiffs to the defendant for interest; money due upon an account stated.

Replication. Plaintiff not indebted, as stated in the plea. Issue to the country.

3rd. Payment.

Replication. Defendant did not pay, etc. Issue to the country.

4th.   Statute of limitations, five years.

Plaintiff demurred to this plea.   Demurrer sustained.   Defendant abided by the demurrer.

6th.   Causes of action set forth in the declaration, are all upon accounts or promises not in writing, and that the several causes of action did not, nor did any or either of them accrue to the plaintiffs within five years.

Special demurrer to this plea, as not being responsive to the declaration, and amounts only to the general issue.   Demurrer sustained, and defendant abided by demurrer.

11th.   To fifth and sixth counts.   Defendant did not request the plaintiffs not to present said bills tò the drawee for acceptance and payment, nor dispense with nor discharge the plaintiffs from presenting said bills for acceptance or payment.

To this plea there was a special demurrer, because not responsive to the counts.   Amounts only to the general issue.   Demurrer sustained.   Defendant abided by demurrer.

12th.   To ninth and tenth counts. . That there has been no agreement, arrangement or understanding between the defendant and plaintiffs, that said bill should not be presented to the drawee for acceptance or payment, within five years next before the commencement of this suit, nor has defendant agreed to pay the same within five years, etc.

Special demurrer to this plea, because it contained no answer to the counts—no defense to the action.   Carried back to the ninth and tenth counts of the declaration.   Plaintiffs abided by demurrer.

13th.   To ninth and tenth counts.   That the agreement that the plaintiffs need not present said bills to the drawee for acceptance and payment, was a verbal agreement, made at the same time said bills were made and executed, and not afterwards.

Special demurrer to this plea was, no defense to the action.   Sustained to ninth and tenth counts of amended declaration.   Plaintiffs abided by the demurrer.

14th.   To ninth and tenth counts.   That the agreement that the plaintiffs need not present said bills to the drawee for acceptance and payment, and that defendant would pay said bills on or before maturity, was a verbal agreement, made at the same time said bills were made, and not after, and that there was no consideration for said agreement, except that stated in said bills.

Special demurrer to this plea, no defense to the action.   Sustained to the ninth and tenth counts of the declaration, as amended.   Plaintiffs abided by the demurrer.

Curtiss *v.* Martin, use, etc.

Pleas to ninth and tenth counts, filed December 11th, 1854.
1st. *Nil debet.*

Demurrer sustained to ninth and tenth counts of amended declaration. Plaintiffs abided by the demurrer.

2nd. Defendant had, at maturity of the bills, funds in the hands of the drawee sufficient to pay the same, but plaintiffs neglected to present the same for payment.

Special demurrer. Amounts only to the general issue. Presents no defense. Sustained to ninth and tenth counts of amended declaration. Plaintiffs abided by demurrer.

3rd. Defendant, at the maturity of the bills, had funds in the hands of the drawee sufficient to pay said bills.

Special demurrer. Same causes. Sustained to ninth and tenth counts of amended declaration. Plaintiffs abided by the demurrer.

There were pleas to all the counts.

4th. Causes of action in all the counts the same. Plea same as second plea last before stated.

Special demurrer. Same causes. Sustained. Defendant abided by demurrer.

5th. Causes of action in all the counts the same. Plea same as third plea last before stated.

Special demurrer. Same causes. Sustained. Defendant abided by demurrer.

6th. Causes of action in all the counts the same. That bills were made in the State of Ohio, payable in the State of New York, and that by the laws of Ohio and New York, a parol contract to dispense with presentment and demand for payment, made at the time of the making of the bills, was void, being inconsistent with the terms, conditions and legal import of the bills.

Special demurrer. Same causes, and also because the laws of New York have nothing to do with the construction of the contract. Sustained. Defendant abided by demurrer.

7th. That before said bills were made, he paid plaintiffs $9,000 in bank notes, issued by the New Hope and Delaware Bridge Company, the full amount of said bills. That they were received by plaintiffs for $9,000, and credited by plaintiffs to defendant upon their books. That said notes, when paid to plaintiffs, were in good repute, and circulated at par, the company solvent, and redeemed its notes in specie ; that the plaintiffs might have paid the same out at par, but retained them until the bank broke, and then charged them to the defendant.

Special demurrer. Same causes as are assigned against the validity of the first plea of Dec. 11, 1854. Overruled. Leave to reply was granted.

Replications.

1st. Said New Hope and Delaware Bridge Company notes were not accepted by plaintiffs in payment or discharge of said bills of exchange, as stated in said plea.

Demurrer to this replication overruled. Defendant abided by the demurrer.

2nd. The notes of the New Hope and Delaware Bridge Company Bank were left with the plaintiffs as collateral security for the payment of said bills of exchange, and to be put in circulation in the ordinary course of business, and to be allowed as payment only so far as put in circulation and value should be received therefor.

Before they could be put in circulation, the bank failed, leaving $5,880 in plaintiffs' hands, which were returned to defendant on the 20th June, 1848, and accepted by him as part of the same $9,000 so deposited by him with plaintiffs.

Rejoinders to second replication to seventh plea, filed Dec. 11th, 1854.

1st. Said notes of the New Hope and Delaware Bridge Company were not left with plaintiffs as collateral security for the payment of said bills, and to be put in circulation in the ordinary course of their business. Issue to the country.

2nd. That said $5,880 New Hope and Delaware Bridge Company notes were not returned by plaintiffs to the defendant, and received as part of the $9,000 deposited with plaintiffs by defendant—but were sold by plaintiffs to defendant for $1,470, which was to be in full satisfaction of said bank notes, and also all matters connected with said bills of exchange.

Surrejoinder. Said $5,880 New Hope and Delaware Company notes were not sold by plaintiffs to defendant for $1,470 in satisfaction of said bills of exchange, as alleged. Issue to the country.

8th. That after making the bills of exchange, and before they became due, defendant paid plaintiffs $9,000, the amount due on said bills, in notes of the New Hope and Delaware Bridge Company, a company duly authorized to issue bank notes. That the same was at the time credited to the defendant by plaintiffs—notes good at the time, passed at par, and were redeemed in specie. The bank broke about two weeks after, and the money was depreciated. Notes were paid to plaintiffs in December, 1847. They retained them until June, A. D. 1848, and then sold them to the defendant for $1,470, which was to be a full satisfaction for said notes or bills.

Special demurrer. Same causes. Sustained. Defendant abided by the demurrer.

Pleas filed March 14th, 1855, to the fifth and sixth counts.

1st. That the request to dispense with the presentment of said bills to the drawee was a verbal one, made at the time of the making of the bills, and at no other time.

Replication. Request not a verbal one, as stated in the plea. Issue to the country.

2nd. Defendant at no time after making said bills, requested the plaintiffs not to present them to the drawee for acceptance or payment, nor dispense with or discharge the plaintiffs from such presentment for acceptance or payment.

Plaintiffs moved to strike this plea from the files. Motion sustained.

3rd. Bills were made in the State of Ohio. That by the laws of Ohio, a contract to dispense with presentation of same for acceptance and payment was void.

Replications.

1st. That contracts were not void. Issue to the country.

2nd. Said bills were not drawn in the State of Ohio. Issue to the country.

4th. Bills were made payable in the State of New York, and by the laws of the State of New York, contracts for acceptance and payment were void, as being inconsistent with the terms, conditions and legal import of the said bills.

Demurrer sustained. Defendant abided by the demurrer.

Additional plea filed 2nd February, 1858.

That on the 1st January, A. D. 1850, and before the commencement of this suit, defendant settled and accounted with the plaintiffs, of and concerning said bills of exchange in said declaration mentioned, and settled and fully paid the same and all the interest and damages then due thereon.

Replications.

1st. Defendant did not settle and account as stated in the plea. Issue to the country.

2nd. Defendant never did fully pay the bills of exchange in plaintiffs' declaration mentioned, and interest and damages then due. Issue to the country.

A motion was made to suppress the deposition of J. G. Coffin and J. B. McVay, taken by the plaintiffs, for the following reasons:

Of J. G. Coffin for the following reasons:

1st. Because the notice is to take the deposition of J. Gardner Coffin, and the deposition taken purports to be that of J. G. Coffin, there being nothing to establish the identity of the parties.

2nd. Because the commission is directed to Jasper E. Brady,

and executed by J. E. Brady, without any evidence of the identity of the parties.

3rd. Defendant excepted to the answer of the witness to the 2nd interrogatory, so far as the same related to the business of defendant, or his contemplated business, because he said he learned it from conversation with him, without stating what the conversation was.

4th. To the answer to the 5th interrogatory, because said witness attempted to explain the meaning of a written contract.

5th. To the answer to the 6th interrogatory for irrelevancy and incompetency.

6th. To the answer to the 7th interrogatory, because it sets up a parol contract, contrary to the terms, conditions and legal effect of the written contract declared on.

7th. To the answer to the 8th interrogatory, because the same is irrelevant and incompetent, and the statement of the witness as to the return of the notes is uncertain and indefinite.

Of Ira B. McVay:

1st. Because the commission is directed to Jasper E. Brady, and is executed by J. E. Brady, without any evidence of the identity of the parties.

2nd. To answer to 1st interrogatory, because he says " the drafts were given in some way in conveyance with the New Hope and Delaware Bridge Co., and is wholly irrelevant."

The court overruled the motion, with the following exceptions :

" In Coffin's answer to 5th interrogatory, the words ' waiving acceptance' were put on the face of the draft, for the purpose of obviating the necessity of the bank's accepting them, or having them protested for non-acceptance, as it was well understood at the time, that Mr. Curtiss had no funds in the bank to draw upon."

To 6th interrogatory :

" From the conversation which I had with the defendant, at the time the drafts were drawn or negotiated, it was not intended that he should have funds in the bank to meet them at their maturity ; the arrangement contemplated a different mode of payment."

The defendant excepted to the opinion of the court, and the court then and there signed a bill of exceptions.

The plaintiffs, to maintain the issue on their part, read in evidence two bills of exchange, one dated September 1st, and the other September 10th, 1847, which said bills of exchange are those described *ante.*

He next read in evidence the deposition of *J. G. Coffin,* taken under a commission to Jasper E. Brady, upon interroga-

tories to J. Gardner Coffin, which interrogatories and answers read, are as follows:

On the part of the plaintiffs:

1st. Do you know Warrick Martin and Frederick Kahl, plaintiffs above named, and Nathaniel B. Curtiss? How long have you known them, or either of them, and where does said Curtiss now reside?

Ans. To the 1st interrogatory, he answers and says, I know Warrick Martin and Frederick Kahl, the plaintiffs in this case, and also Nathaniel B. Curtiss, the defendant. I have known Martin for at least twenty years, and Curtiss and Kahl for, I suppose, twelve years.

2nd. In what business were said plaintiffs engaged in the fall of 1847, and under what name and style did they then conduct their said business, and where? What was the business of said Curtiss at that time?

Ans. To the 2nd interrogatory, he answers and says, in the fall of 1847 the plaintiffs were engaged in the business of exchange brokers, in the name and style of Warrick Martin & Co., in the city of Pittsburg, Pennsylvania. At that time Curtiss was not engaged in any business; he was making arrangements to go into a sort of brokerage business, in Philadelphia or New York, and to act as an agent for the New Hope and Delaware Bridge Co. Bank. This is my recollection of what he was about engaging in, from what I learned in conversation with him.

3rd. Do you know the handwriting of said Curtiss, and how do you know it?

Ans. To the 3rd interrogatory, he answers and says, I know the handwriting of Curtiss; I have seen him write frequently.

4th. Look at the papers now shown you, purporting to be drafts or bills of exchange, drawn by said Curtiss, in favor of Warrick Martin & Co.; describe them by numbers, dates, respective amounts for which drawn, on whom drawn, and on what time. State in whose handwriting they are filled up and signed, if you know; mark and attach the same to your deposition, and designate the marks so placed by you thereon, in your answer to this question.

Ans. To the 4th interrogatory, he answers and says, one of the drafts is numbered 1275, dated September 1st, 1847, for four thousand dollars, drawn on E. Platt, Esq., cashier of the Leather Manufacturers' Bank, New York, at four months after date; the other is numbered 1276, dated September 10th, 1847, for five thousand dollars, drawn on E. Platt, Esq., cashier of the Leather Manufacturers' Bank, New York; they are both filled up and signed in the handwriting of N. B. Curtiss, the de-

fendant. I have marked these drafts J. G. C., No 1, and J. G. C., No. 2, on the back of each draft.

5th. What word, if any, do you find written across the face of said drafts? By whom, and when were they written, if you know? Were you or not present at the time when said drafts, or either of them, were or was made; and do you or not know the reason for placing said words thereon?

Ans. To the 5th interrogatory, he answers and says, the words "waiving acceptance" are written across the face of these drafts, in the handwriting of Curtiss. My recollection is, that the drafts were made by Curtiss in Warrick Martin & Co.'s office, in Pittsburg, in the fore part of December, 1847. I was present when the arrangement was made for giving the drafts, but I do not recollect whether I saw the drafts filled up or not, but I presume I did.

[Here follows that portion of the answer which was suppressed.]

6th. Had or had not said defendant, at the time of making said drafts, or when they or either of them fell due, any funds in said Leather Manufacturers' Bank, or in the hands of said drawee, to meet said drafts? What have you understood from said defendant, if anything, on that subject?

Ans. To the 6th interrogatory, he answers and says, [here follows that part of the answer excluded by the court,] I cannot say whether the defendant had any funds in the bank at the time they matured.

7th. Do you or not know the reason why said drafts were given? What understanding or arrangement, if any, was made in regard to them, or existed at the time? What consideration was paid to said Curtiss therefor, and how was it expected said drafts would be paid? Please state fully all your knowledge touching the several branches of this question.

Ans. To the 7th interrogatory, he answers and says, Warrick Martin & Co. gave Curtiss their drafts on New York, for ten thousand dollars, and received these drafts and one thousand dollars in money, from Mr. Curtiss, in payment; the drafts which Warrick Martin & Co. gave for ten thousand dollars, were paid by the person on whom they were drawn. At the time Warrick Martin & Co. received the drafts from Curtiss, it was agreed between the parties, that the plaintiffs should receive nine thousand dollars of the notes of the New Hope and Delaware Bridge Co. Bank, and if they paid them out, it was to be, with the thousand dollars in cash, a payment of the drafts; but if they did not, then whatever amount they did pay out was to be credited upon the said drafts, and defendant was to pay the balance; they did receive nine thousand dollars of the notes

of the said bank, at different times, and paid a part of them out, when the bank failed, leaving in their hands five thousand eight hundred and eighty dollars. At the several times at which the said notes of said bank were received by plaintiffs, the amount was placed to the credit of the defendant, on their books. About, I suppose, the time that these drafts matured, they were charged, together with the amount of the bank notes unused, to the defendant, on the same books. These facts I state, without a reference to the books, from recollection of what occurred at the time, and from a reference to the books this morning, I find my recollection to be correct; by these facts, I mean the charges and credits to the defendant.

8th. If funds or securities of any kind were deposited with said Warrick Martin & Co., to apply in any way on said draft, state what they were, by whom, the amount and nature thereof, on what terms, and when left; the connection of defendant with, or his interest in said securities; whether any and what part of them was used or disposed of by said Warrick Martin & Co., and how much, if any, of said funds or securities were not used by said firm, or applied on said drafts; how much of them; why they were not all used, and what became of those not used, and what proportion of said drafts remained unpaid, if any; please state the whole fully; what, if anything, passed between said parties, to your knowledge, in relation thereto; your situation at the time, and means of knowledge in the premises.

Ans. To the 8th interrogatory he answers and says, the notes of the New Hope and Delaware Bridge Company Bank, which were deposited with plaintiffs by defendant, and which were not used, were returned to defendant, according to my recollection, in June, 1848, at which time there appears a credit on the books of Warrick Martin & Co., to the defendant, of one thousand four hundred and seventy dollars, leaving a balance due on the draft of four thousand four hundred and ten dollars against the defendant, as appears from the books. I was, at the time of the transactions which I have related, book-keeper and clerk of Warrick Martin & Co.

I have fully answered all the rest of this interrogatory in my answer to the seventh interrogatory.

Deposition of Ira B. McVay.

1st. Examine the papers attached to the deposition of J. Gardner Coffin herein, purporting to be drafts drawn by N. B. Curtiss, in favor of Warrick Martin & Co. upon E. Platt, Esq., Cashier of the Leather Manufacturers' Bank, dated September 1st, and September 10th, 1847, and numbered 1275 and 1276, respectively, and state what you know, if anything, relative to the making of said drafts by said Curtiss; the occasion of giv-

ing the same; what was the understanding and arrangement between the parties in relation thereto, and how you derive your knowledge on the subject.

Ans. To the first interrogatory, he answers and says, I have examined the drafts mentioned in this interrogatory, and attached to J. G. Coffin's deposition. I know that these drafts were drawn and signed by N. B. Curtiss; they were given some way in connection with some notes of the New Hope and Delaware Bridge Company Bank, which notes were left with and forwarded to Warrick Martin & Co. for circulation. There was a considerable amount of these notes in the hands of Warrick Martin & Co. uncirculated at the time the bank failed, but I cannot say what the amount was. I know nothing about the understanding and arrangement between the parties in relation to the matter. All the knowledge I have of these, results from the fact that I was teller in the office of Warrick Martin & Co., except that I know the handwriting of the body of the drafts, and the signatures thereto to be in the handwriting of Curtiss. I have frequently seen him write.

2nd. What, if anything, have you heard said Curtiss say about the drafts, or either of them, remaining in whole or in part unpaid; why they were not fully paid; how much was still due; when, where, and to whom, and under what circumstances were these statements made?

Ans. To the second interrogatory, he answers and says, I have no distinct recollection of the purport of any conversations of Mr. Curtiss about these drafts; I have heard him talk about them, but not feeling any interest in the matter, I do not recollect the purport of his conversations.

To the 3th interrogatory, he says, I never heard defendant make any promise to pay these drafts.

The defendant objected to said depositions, for irrelevancy and incompetency. The court overruled the objection and admitted the evidence, and the defendant excepted.

Plaintiffs next read in evidence a letter from the defendant to Warrick Martin & Co., dated January 8th, 1847, together with the postoffice mark or stamp thereon, which said letter is as follows:

New York, January 8th, 1847.

Messrs. Warrick Martin & Co. — *Gents:* Your favor of the 4th instant was duly received and contents noted. No one can regret the course things have taken more than the writer of this, and I deem it unnecessary to multiply words with you, but when the proper time comes, I will make *square work;* at present we are completely tied up, and cannot ever pay the bank what we owe her in her own notes, as an attachment has been issued against the bank as a foreign corporation. It will depend on what course the bank pursues towards us, *what time*

I shall get in *proper position ;* but rest assured the time will come, and now take notice—I wish you to write me immediately upon the receipt of this, stating the exact amount of N. Hope notes you have on hand, received from me, which you have never circulated; state also that you must hold them as collateral until some arrangement is made about that bill; without going into particulars, also at what price the whole or any part of them can be sold in Pittsburgh, and in that letter state nothing else. I wish to show that letter to Mitchel, who knows nothing of my arrangement with you, and it is best as things are now that he should not. The $9,000 N. H. was charged to me, and I wish to make a return of what was not used, and although I cannot command the same notes, I can obtain them from other sources. Be discreet, and keep your own councils, and by so doing I trust you will promote your own interests as well as mine. I think you had better not correspond with St. John on the subject. I shall come to Pittsburgh as soon as I can leave New York. Please let me hear from you soon.    Respectfully,

N. B. CURTISS.

Messrs. Warrick Martin & Co.,
    Bankers, Pittsburgh, Pa.

The defendant then read to the jury a bill of discovery filed in this cause against Warrick Martin, May 13th, 1857, stating that he did not read the same as evidence, but only for the purpose of showing the application and relevancy of the answer of the said Martin to the same.

The defendant then offered to read the answer of said Martin to said bill of discovery, to which the plaintiff objected, and before the said answer was read, the plaintiff read the affidavit of Jonathan K. Cooper, filed February 2, 1858, which is as follows:

Jonathan K. Cooper, being duly sworn, says that he is and has been of counsel for said Courtney and Harbaugh, the parties in interest in this suit, ever since the same was instituted; that the firm of Cooper and Reynolds, of which affiant is a member, received from said Courtney and Harbaugh the bills of exchange declared on, and on which said suit is founded, some four or five years since, and were then and still are retained by them, as the holders and equitable owners and holders of said bills, to institute and prosecute said suit, and to look to them alone as the parties to whom alone they are responsible for its management, and the disposal of whatever may come to their hands in the prosecution of said claim. Said suit was originally brought in the name of said Martin and Frederick Kahl, (since deceased,) for the use of said Courtney and Harbaugh, but neither said affiant nor said Reynolds, as affiant is informed and believes, ever knew or had any intercourse with said Kahl, nor with said Martin till about a year since, when said Martin came to Peoria. Affiant states that he has knowledge, derived as well from said Curtiss as from said Courtney and Harbaugh, that said Courtney and Harbaugh are the real parties in interest in this suit. Said Curtiss has uniformly, since affiant's connection with the subject, recognized said Courtney and Harbaugh as the actual parties in interest, and entitled to control and manage the same, and has on more than one occasion, proposed to treat with them for the settlement of said claim, and as confirmatory in part hereof, affiant refers to the affidavit of said Curtiss, filed in said

37

cause, under date of March 26th, 1855, for which purpose only, affiant asks to have the same taken and treated as part hereof. Affiant has heard said Curtiss say in connection with propositions of settlement, that if the money was coming to the said Martin or his family, he, said Curtiss, might be induced to make more liberal offers, but that as not a dollar of anything he might pay would come to them, he was not disposed to do anything better than he had offered.

JONATHAN K. COOPER.

Sworn to before me, this second day of February,

A. D. 1858.        JAMES WESCOTT, *Clerk.*

The defendant objected to the reading of said affidavit, because said Cooper was interested in the suit, he being security for costs, and on account of its incompetency and irrelevancy. The affidavit was read to the court only, with a view and for the purpose of laying a foundation for an objection to the answer of said Martin, and therefore the plaintiffs' counsel objected to the reading of the answer of said Martin in evidence. The court overruled the objection, and plaintiffs excepted to the opinion of the court, and the answer was read in evidence.

The plaintiff then offered in evidence a bill of discovery, filed in this cause by the defendant against one of the then plaintiffs, Frederick Kahl, on the 16th May, 1855, which is the same, substantially, as the bill of discovery filed by the said defendant against Warrick Martin in said cause, stating that one object of the evidence was to contradict the answer of said Martin. The defendant objected to the same as evidence for such purpose, but the court overruled the objection and admitted the same in evidence.

Defendant admitted that an injunction had been issued upon the filing of the bill of discovery against Frederick Kahl.

The jury found a verdict for the plaintiff for debt, $4,410, and $3,551.28 damages. The defendant entered a motion for a new trial.

The errors assigned are—

1st. Sustaining the demurrer of plaintiff to the 4th, 6th and 11th pleas of the defendant, filed Sept. 18, 1854.

2nd. Sustaining plaintiff's demurrer to pleas Nos. 4, 5, 6 and 8, filed Dec. 11, 1854.

3rd. Rendering judgment for the plaintiff upon the verdict.

4th. Overruling demurrer to plaintiff's first replication to the 7th plea, filed Dec. 11, 1854.

5th. Striking from files 2nd plea, filed March 14, 1855.

6th. Sustaining demurrer to 4th plea, filed March 14, 1855.

7th. Refusing to suppress depositions of J. G. Coffin and Ira B. McVay.

8th. Admitting said depositions in evidence.

9th. Admitting improper evidence, offered by plaintiff.

10th. Giving the instructions asked by plaintiff.
11th. Refusing instructions asked by the defendant.
12th. Overruling defendant's motion for a new trial.
13th. Entering judgment on the verdict.

N. H. PURPLE, for Appellant.

GLOVER & COOK, and J. K. COOPER, for Appellees.

WALKER, J. The first objection urged against this judgment, is the sustaining the plaintiff's demurrer to the defendant's plea to the fifth and sixth counts of the declaration. This plea traversed the allegations in these counts, that when the bill was drawn and at its maturity, defendant requested plaintiff not to present the same for acceptance and payment, and dispensed with and discharged the plaintiff from the presentment of the bill for acceptance and payment. The first plea filed, was a plea of *nil debet* to the whole declaration, which fully traversed every material allegation it contained. And this plea did no more than again traverse facts already traversed. According to the ancient rules of pleading, the defendant had a right to file such a plea as this, traversing any material allegation in the declaration, or he might plead the general issue. When he pursued the former course, it put the plaintiff upon the proof of the fact traversed, and failing to prove that fact, he failed in his action ; and by pleading the general issue, he put the plaintiff to the proof of every material allegation, and failing in any one of them, he was defeated in a recovery. But we do not understand the defendant has the right to plead both pleas in the same action, and upon doing so, the court may strike such a plea from the files as unnecessarily incumbering the record. By having filed the general issue, everything could be attained under it that could be under both. And it was in the nature of, and in part amounted to the general issue, and was obnoxious to a special demurrer for that reason, as that plea had already been filed. There was no error in sustaining this demurrer.

A demurrer was sustained to the fourth and fifth pleas, filed December, 1854, on the ground that these pleas only amounted to the general issue. Whether they did or not is not material, if the facts alleged in them could have been given in evidence under the general issue already pleaded in this action. Unless the bill of exceptions showed that the evidence was offered on the trial and rejected by the court, the presumption would be that it had been admitted under the general issue.

The same may be said of each of the remaining pleas, to which demurrers were sustained. And as the bill of exceptions

nowhere shows that the evidence which was admissible, as well under them as under the general issue, was rejected by the court, there was no error in sustaining the demurrers to these pleas, for which the judgment should be reversed.

It is insisted that the court erred in refusing to suppress the deposition of Coffin, because the notice was to take the deposition of J. Gardner Coffin, and the deposition taken purports to be that of J. G. Coffin, and because the commission is directed to Jasper E. Brady, and executed by J. E. Brady, when there was no evidence to identify the persons as being the same. We see that a commission was issued to a person giving his full name, and was executed by a person of the same surname, and with the initial letters of his christian name. This, it is believed, is sufficient to raise a presumption, that hardly admits of a doubt, that he is one and the same person, and in addition, he certifies that he acts·in pursuance of the commission which is annexed to the deposition, and he signs his name to the certificate as commissioner. This, we think, is sufficiently certain, that the person to whom the commission was directed had executed it. He also certifies, that in pursuance to the commission he had taken the deposition of J. G. Coffin. In the commission he was commanded to take the deposition of J. Gardner Coffin, and we think the certificate renders it reasonably and sufficiently certain that he had examined the proper person. The same objections were taken to McVay's deposition, and were properly overruled. We are also of the opinion, that there was no error in overruling the motion to suppress these depositions for the other reason assigned, and that they were properly permitted to be read in evidence on the trial, as the evidence was pertinent and material under the issue.

It is insisted that the court erred in admitting the letter of defendant, written to Warrick Martin & Co., from New York, under date of the 8th of January, 1848, and mailed to their address at Pittsburgh, on the same day. The materiality of this letter under the issue, will depend upon whether a subsequent promise or agreement to pay by the drawer of a bill made to the drawee or holder, who had failed to present it for acceptance or payment, waives the right to insist that he is discharged from liability, on account of such failure to present. It is said by Chitty, in his treatise on Bills, that, "The consequences, however, of a neglect to give notice of non-payment of a bill or note, or to protest a foreign bill, may be waived by the person entitled to take advantage of them. Thus, it has been decided, that a payment of a part, or a promise to pay the whole or part, or to see it paid, or an acknowledgment that it must be paid, or a promise that he will set the matter to rights,

or a qualified promise, or a mere unaccepted offer of *composition* made by the person insisting on a want of notice, after he was aware of the laches, to the holder of a bill, amounts to a waiver of the consequence of the laches of the holder, and admits his right of action. Where there has not been an express waiver of notice of dishonor, *facts implying* a waiver must be left to the jury." Page 501. In this letter there are expressions which clearly imply a promise to pay the bills held by the plaintiff, and it was, for that reason, proper evidence to go to the jury.

It is urged, that the court erred in admitting the affidavit of Cooper, because he was security for costs in the suit. It appears that this affidavit was read for the purpose of laying a foundation for an objection to the admission of the answer of Martin, the plaintiff of record, to a bill of discovery, filed by defendant. This evidence was, obviously, directed to the court and not to the jury, and notwithstanding it was read to the court, the answer of plaintiff was permitted to be read, and we are at a loss to see in what manner it could have prejudiced the defendant in the slightest degree.

It was also urged, that the court erred in permitting the plaintiff to read in evidence a bill of discovery, exhibited by defendant, against Frederick Kahl, one of the then plaintiffs, for the purpose of contradicting the answer of the plaintiff, Martin. On the argument, it was urged with a considerable degree of earnestness, that the defendant had no right to discovery from the plaintiff of record, who sues for the use of the equitable holder of a bill or note. And it was insisted, that as his admissions were not evidence against the holder, his answer to a bill of discovery, for the same reason, should be rejected. It is believed to be the law, that any admissions made by the holder, while he was the owner of the bill or note, are, as against a purchaser after maturity, admissible. And even if they were not, we see no reason why the defendant should be deprived of the evidence of the plaintiff, simply because he may have instituted suit for the use of some other person. When the equitable holder purchases a note or bill over due and dishonored, he takes it subject to all of its infirmities, and the law requires him to ascertain whether the maker or other person apparently liable, has any defense, and failing to do so, he acts at his peril, and must submit to any loss he has incurred for the want of care in purchasing. We think that all the reasons, why a plaintiff suing for the use of another, should be required to discover any matter of defense which existed before he parted with the instrument, apply with equal force as in the case of any other plaintiff. And it has been held by this court,

that the party against whom an answer to a bill of discovery has been read, may contradict it by any legitimate evidence. The court says, " It is true, that, after reading the answer to the jury, the appellants were not at liberty to discredit it, by impeaching the general reputation of the appellee for truth ; for the reason, that a party is not permitted to show that his own witness is unworthy of belief; but he may always controvert the correctness of the statements made by his own witness, by the introduction of other evidence, and in that way discredit his testimony. An answer to a bill of discovery is entitled to no higher consideration than the answers of a party's own witness upon the stand, and may be controverted in the same way." *Chambers et al.* v. *Warren*, 13 Ill. R. 321.

There would seem to be greater reason to permit the beneficial plaintiff to contradict the answer of the nominal plaintiff, than to permit a defendant to do so, after having compelled the discovery, and if he were not permitted to do so, his position would be worse than that of the defendant or nominal plaintiff. And such a rule would be manifestly unjust.

The case of *Chambers* v. *Warren* is, we think, decisive of the question, and renders further discussion unnecessary.

The plaintiff asked for, and the court gave, these instructions, to which the defendant excepted :

1. That if the jury believe, from the evidence, that at the time the bills sued on were made, Curtiss agreed to waive or dispense with the presentment of said bills for acceptance and payment, the liability of said Curtiss on said bills was complete at their maturity, without presentment for acceptance or payment, or protest for non-acceptance or non-payment, or notice thereof to said Curtiss.

2. If the jury believe, from the evidence, that when said notes were made, Curtiss deposited with Warrick Martin & Co., notes of the New Hope and Delaware Bridge Company equal in amount to said bills, and from the proceeds of which it was agreed by said parties, said bills would be paid, said Warrick Martin & Co. were not bound to call on the drawee of said bills for acceptance or payment, but might at once sue Curtiss on said bills when they fell due, if not then paid conformably to the understanding of the parties, out of the fund so provided.

3. That the payment by Curtiss, if proven, of any part of said bills after they fell due, is in law a waiver of presentment to the drawee for acceptance and payment, and notice for non-acceptance and non-payment.

4. That the counts in the plaintiff's declaration, alleging due diligence in presenting said bills to the drawee for acceptance and payment, and protest thereof for non-acceptance and non-

payment, are sustained by proof of anything showing a sufficient excuse for the want of such diligence.

5. An acceptance by a creditor from his debtor of a less sum than is admitted by the debtor to be due, is not a satisfaction of the whole debt, and will not bar a suit by the creditor to recover the balance of the debt.

6. If Curtiss was indebted to Martin & Kahl in a sum exceeding five thousand dollars, and if Martin & Kahl agreed to take twenty-five cents on the dollar of their debt in full satisfaction of the whole debt, and in pursuance of said agreement Curtiss paid twenty-five cents on the dollar of his debt to Martin & Kahl, these facts would not be a bar to a recovery, by Martin & Kahl, of the remainder of said debt.

7. A bill of exchange payable on a specified day, and not to be presented for acceptance till it is presented for payment, and if in such case acceptance is waived, it dispenses with presentment for payment also, and the drawee is at once liable upon it, if not paid at maturity.

8. If the jury believe, from the evidence, that Warrick Martin & Co. received from said Curtiss, and held the notes of the New Hope and Delaware Bridge Company, as collateral security to the payment of the said bills of exchange sued on, the sale of said notes, or any part of them, to said Curtiss, by said Warrick Martin & Co., for twenty-five cents on the dollar, or any other price, would not discharge said bills of exchange, only to the amount actually paid by said Curtiss for said notes, upon such purchase.

9. The possession by Courtney & Harbaugh, of the bills sued on, are evidence of ownership in said Courtney & Harbaugh.

10. The fact that this suit is brought and prosecuted upon this record in the name of Martin, for the use of Courtney & Harbaugh, is evidence from which the jury may presume that said Courtney & Harbaugh are the real parties in interest.

11. If the jury shall be of opinion that the plaintiffs are entitled to recover, they shall find for said plaintiffs the amount of said bills of exchange still unpaid, as debt, and interest on that amount from the time it fell due, as damages.

12. If the defendant, Curtiss, did give to the plaintiffs the bills of exchange sued on in this case, and did deposit with the plaintiff $9,000 of notes of the New Hope and Delaware Bridge Company, with the agreement that plaintiffs should put said notes into circulation, so far as they could, and so far as said notes were put in circulation the same were to be credited upon the bills of exchange, and that Curtiss should pay the balance of said bills of exchange, and plaintiff did circulate the New Hope and Delaware Bridge Company notes, until said company failed,

and had $5,580 of said notes on hand at that time, and Curtiss purchased the said notes of plaintiffs for twenty-five cents on the dollar, said notes being then held as collateral security for the payment of said bills of exchange, then the sale of said New Hope and Delaware notes to Curtiss would not discharge the liability of Curtiss on said bills of exchange, except as to the amount which plaintiff actually received from said New Hope and Delaware Bridge Company.

13. This suit being brought for the use of Springer Harbaugh and Wilshire S. Courtney, the presumption of the law is, that they are the real parties in interest in this suit.

14. Although the answer of Warrick Martin has been admitted in evidence, yet the jury are not bound to take it as absolutely true ; they are to give it just such weight as they believe it is entitled to, as a means of coming at the truth.

We will take occasion to say that it is a matter of regret that the records of courts should be incumbered by numerous instructions presenting the same proposition of law in the same terms, or so nearly so as to leave no difference in their meaning. We can see no benefit resulting from such a practice, and think it should be discouraged, and when asked, no more of them should be given by the court than embody the principle intended to be announced. The practice seems to be growing, and it can have no other tendency that we can perceive, than to confuse the jury, and induce them to suppose that the slight variance in the language implies a difference of principle. A number of the foregoing instructions are of this character, and should for that reason have been refused, though containing correct legal propositions.

In determining the question of whether these instructions were properly given, it will be necessary to ascertain what the law is, in regard to the rights and liability of parties to negotiable paper.

The docrine as laid down by Story on Bills, p. 438, sec. 371, seems to be the well-established law. He says, " So, if there be an express agreement, either verbal or in writing, between any of the parties to the bill, to waive or dispense with the necessity of a due presentment of the bill at its maturity, that will, as between themselves, although not as to other parties, constitute a sufficient excuse for non-presentment thereof." The first instruction announces this legal proposition, and it was a question for the jury to find, whether a presentment was waived by agreement of the parties, and there was evidence in the case that justified its being given.

The second instruction on the same principle was properly given. It told the jury that if the drawer had placed in the

hands of the payee, at the time the bills were drawn, the amount of the bills in a particular kind of funds to be disposed of, with the agreement by the parties, that the proceeds of these funds should be applied to meet the bills when due, that such agreement would amount to a waiver of presentment, and that the payee might sue the drawer at maturity, if they were then not paid according to the agreement. The evidence all tends to show that presentment was dispensed with, and that notice was not required. The drawer wrote across the face of the bills " waiving acceptance," and that he had placed in the hands of the payees, funds to be converted to meet these bills, all of which showed an intention and agreement to waive a presentment and notice.

The jury are told by the third of these instructions, that if they believe, from the evidence, that defendant paid any part of these bills after they fell due, it would be a waiver of presentment for acceptance and payment. This we have already seen is the law, and there was evidence in the case which justified its being given. The evidence showed a subsequent payment, and it was for the jury to determine of what character it was.

The fourth instruction was properly given, as the decisions settle, that evidence which shows an excuse for not using diligence, supports the averment of diligence. *Taunton Bank* v. *Richardson*, 5 Pick. R. 436 ; *Baker* v. *Parker*, 6 Pick. R. 80.

The fifth instruction presents the question, whether the acceptance of a smaller amount than that which is due as a payment in full, is binding on the creditor. On this question the decisions, which are numerous and uniform, hold that it is not. They proceed upon the ground that there is no new consideration to support the agreement. It is said that a payment of a part of a debt, or of liquidated damages, is no satisfaction of the whole debt, even when the creditor agrees to receive a part for the whole, and gives a receipt for the whole demand, and a plea of payment of a smaller sum in satisfaction of a larger, is bad, even after verdict. 2 Pars. Contracts, 130 ; and the numerous authorities cited support this doctrine. But if the smaller sum be taken by way of compromise of a controverted claim, or from a debtor in failing circumstances, in full discharge of the debt, no reason is perceived why it should not be binding on the parties. This instruction was properly given, as it only presents this principle of law.

The ninth instruction was properly given, as the principle, that the holder of a note, when there are no circumstances of suspicion of *mala fides*, is presumed to be the legal holder and

owner. This principle is too familiar to require discussion or authority.

The other eight instructions asked by and given for the plaintiff, except the fourteenth, (the principle upon which it was properly given has already been discussed,) only present the same questions involved in the six, already considered, and it is deemed unnecessary to notice them further.

The instructions asked by the defendant, and which the court refused to give, only present the reverse of the instructions given for the plaintiff, and the discussion of those disposes of these ; and they were, consequently, properly refused.

Upon the whole record, we are unable to perceive any error, for which this judgment should be reversed.

*Judgment affirmed.*