# GEORGE F. HARDING

*v.*

# GLASGOW PARSHALL.

| 56 | 219 |
| 121 | 29 |
| 122 | 549 |
| 56 | 219 |
| 128 | 544 |
| 56 | 219 |
| 144 | 225 |
| 56 | 219 |
| 147 | 325 |

1. PLEADING — *averment as to execution of a contract by an agent.* In a bill for the specific performance of a contract which was executed by an agent, it is not necessary to aver the manner of its execution in that regard, as that is only matter of proof. By the rules of pleading it is only required to aver facts, not the evidence.

2. SAME — *averment as to ratification of such a contract.* Nor is it necessary in such case, in averring that the principal ratified the agreement made by the agent, to allege that he did so by the receipt of a portion of the purchase money under the agreement. It is enough to aver that he did ratify it. The receipt of the money would be simply the evidence of that fact, and need not be averred.

3. RESCISSION OF CONTRACT — *placing parties in statu quo.* As a general rule, a party who becomes entitled to rescind an agreement, in order to avail of that right, should restore to the other party what has been received — in other words, place him in *statu quo.*

4. So, where one, claiming to be the agent of the owner of land, makes a contract of sale thereof, the owner cannot be permitted to repudiate the

contract on the ground of want of authority in the agent, without restoring money which he has received under the agreement, from the purchaser.

5. PAYMENT — *to one of several joint obligees.*   A purchaser of land from two joint owners may make payment to either of them in discharge of his obligation, and the fact that he makes payment to one, after being notified by the other not to do so, will in nowise impair his rights under the contract.

6. SPECIFIC PERFORMANCE — *defective title.*   Where there is a contract of sale of land, and an agreement on the part of the vendor to convey with certain specified covenants for title, it is the right of the purchaser to have a specific performance, notwithstanding the vendor's title, in view of the character of covenants he agreed to make, may be found to be defective.

7. SAME — *of joint owners — failure to fulfill their agreement with each other.*   The right of a purchaser of land from two joint owners, to have a specific performance of the contract cannot be impaired by reason merely that one of the vendors has failed to comply with an agreement with the other in respect to the subject matter of the contract.

APPEAL from the Circuit Court of Mercer county; the Hon. ARTHUR A. SMITH, Judge, presiding.

The opinion states the case.

Mr. J. N. BASSETT, for the appellant.

Messrs. FROST & TUNNICLIFF, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill brought by Parshall to enforce a specific performance of a contract and compel a conveyance from appellant and Paullin, of a tract of land in Mercer county. It alleges that the defendants claimed to be seized in fee of the land, and, on the 6th of April, 1864, contracted in writing to sell the land to complainant, for the sum of $1,400; that $20 were paid in hand, $600 to be paid on the 15th of May of that year, and the balance on the first Mondays in May, 1865 and 1866, with six per cent interest, and to pay all taxes. On payment being

made, he was to receive a deed with covenants of warranty against the patent title and the acts of grantors.

The bill further alleges that the contract was signed severally by both defendants. The contract set out in the bill closes with this language: "This contract is subject to the ratification of George F. Harding," and his name is signed by Paullin as his agent. It alleges that the contract was duly ratified by Harding in the month of May, 1864. A compliance with the terms of the contract by complainant is alleged in the bill, by the payment of the notes as they fell due and became payable.

It is alleged that defendants refuse to convey; prays answer and the execution of the contract. Paullin did not file an answer, but Harding answered.

In his answer he denies that he made or ratified the contract, and alleges that Paullin had no authority, either verbal or written, to make the contract, and sets up the statute of frauds. It denies that Parshall had performed the contract, or had made the payments to Harding, or to any one having authority to receive the money for him. It is admitted that he did refuse to make a conveyance, but denies that Harding and Paullin claimed to be seized of the land in fee, alleging that the land was owned by Harding and one Joseph S. Mathews.

With this answer Harding and Mathews filed a cross-bill. It alleges Harding and Mathews, on the 13th of October, 1862, owned the land and had occupied it for more than five years. That complainant in the original bill was their tenant on the land; that a suit in ejectment was then pending in the circuit court of the United States, in which Jedediah Paullin was plaintiff and Parshall was defendant; that Daniel Paullin was the real party in interest and had caused the suit to be brought. He at that time represented that the title was good and plaintiff would recover. That these representations were untrue and made to induce Harding to divide the land, and an agreement was entered into to dismiss the suit and divide the land.

The agreement is set out in the bill, and provides for the dismissal of the suit, and that Daniel Paullin should convey to complainants an undivided half of the land, for the consideration of $500, and with covenants of warranty, except against tax titles, and that Paullin should break thirty acres of the land within two years. That complainants, upon demand, should convey an undivided half of the land to Daniel Paullin by quit claim deed, only covenanting against their own acts. This agreement is under seal, and is signed by Paullin and Harding only; but the bill alleges that Harding acted for and as the agent of Mathews. The bill further alleges, that Harding and Mathews did, within thirty days, make and deliver the deed required by the contract. The bill charges that Paullin did not have the genuine patent title to the land, but had no title whatever, and he has not broken thirty acres of the land.

It is then charged that Paullin, claiming to be the agent of Harding, made a contract to sell the land to Parshall, but charges he had no authority to do so, and Harding had never ratified it, but notified Parshall that Paullin had no such authority, and he would only ratify it upon the condition that half of the purchase money be paid to Harding or Mathews and not to Paullin; that Paullin had never made a deed as required by the agreement, but gave notice that he could not and would not make it, and that he never had the patent title, and claimed that complainants would lose the land unless they furnished money to buy the title; that they had demanded the title more than two years previously, and that they notified Paullin if he failed to make the deed within ten days, the contract would be at an end, and he failing to do so, complainants terminated it, and so declared to Paullin; that Parshall was tenant on the land when these several contracts were entered into by the parties. The bill prays that both contracts be set aside; that Paullin pay Parshall his money and reconvey to complainants; and that Parshall's possession be decreed to complainants, and for general relief.

Paullin answered the cross-bill, and denies that Harding and Mathews owned the land when they agreed to divide it, and denies any knowledge of any ejectment suit then pending; denies that he was real plaintiff to it, or that he made the representations charged in the cross-bill. He admits the execution of the contract, but denies that Harding and Mathews performed it on their part, or made the deed with covenants against their own acts; but that they tendered a quit claim deed without any covenants. He denies that he failed to perform his part of the contract; but alleges performance by delivering a deed as required by the contract, and that he had the genuine patent title when the agreement was made. He alleges that he made the contract with Parshall, and insisted that he had authority, and that it was ratified by Harding after it was made. He admits that he failed to break the prairie, but sets up as an excuse, that he had sold the land before the time had expired.

He answers, that he had paid Harding $300, being half of the payment of May, 1864; that he had received from Parshall $1,471.75, but had paid nothing to Mathews; that he had bought what he believed to be the patent title, in June, 1861, but had never recorded the deed; that by the destruction of the record and death of the clerk, the evidence of his title by a foreclosure of a mortgage against O'Hara was lost, his title liable to be defeated and to litigation, and this led him to ask Harding to buy the O'Hara title with him after selling to Harding and Mathews. Replications were filed to the answers.

A hearing was had, when the court below rendered a decree, that Harding and Paullin, within forty days, execute a deed to Parshall as provided by the contract; and that Paullin pay to Harding and Mathews $400, when Harding shall join Paullin in the conveyance to Parshall; all other relief was denied. The case is brought to this court on appeal by Harding.

It is first urged that the bill fails to allege that Harding made the contract by an agent, but the language employed

implies that he executed it in person.   We do not so under-
stand the allegation.   The contract, as set out, purports to have
been executed by appellant's agent.   But had it simply alleged
that he made and executed the agreement it could not have
been material, as a party is only required, by the rules of plead-
ing, to aver facts and not the evidence.   It was not material to
aver the manner of its execution, as that was only matter of
proof.   This objection seems to be hypercritical and is without
force.

It is next urged that Paullin had no authority to make the
contract for appellant.   The latter, in a letter to Paullin, says to
him, " I think the land is worth $1,000.   You may sell it at
that rate; but it is best, if you agree with me, to have Joseph
S. Mathews, of Aledo, who owns with me, sell it for us.   Per-
haps $800 is enough, he taking our title as it stands."   And
Parshall swears that appellant admitted to him that Paullin
was authorized to make the sale, and Paullin swears that he
was authorized by appellant.   When we consider this evidence
we can not entertain a doubt that authority was given.   Appel-
lant's letter gives it in explicit terms that will bear no other
construction.   It is true, he suggests that it would be better
for Mathews to make the sale, but he by no means withdraws
the authority already given.   Appellant, however, says he
saw Paullin subsequently, and before the sale, and withdrew
the authority.   Conceding this to be true, then the question
arises, whether he subsequently ratified the contract.

In his deposition, Parshall swears that appellant fully recog-
nized the contract as being binding, but appellant swears
he informed Parshall that Paullin had no authority to make
the agreement; and Mathews concurs with appellant in this
statement.   It does not appear that appellant denies that he
ratified the contract, but on the contrary he received $300 of
the purchase money from Paullin long after the contract was
made, and, so far as we can see, he still retains it, never having
offered to return it.   This is strong evidence of ratification.
But appellant and Mathews say the ratification was upon the

condition that one-half the purchase money should be paid
to them, while Parshall states it was unconditional. But even
conceding that it was conditional, appellant could waive the
condition and permit Parshall to go on and carry out his part
of the agreement. And he could waive the condition by
express agreement or by acts equally binding. That it was
unconditional is apparent from appellant's letter of June
11th, 1864, to Paullin. He there says, "I have just received
your note in regard to the sale to Parshall. Mr. Mathews
wrote me in regard to it some weeks ago, and I have ratified
the sale. I saw Mr. Parshall and he exhibited his bond. It
warrants, or rather calls on our deed to warrant, against patent
titles only. His hesitation is not as to the patent but the tax
title. On that account he wishes to be let off from the con-
tract. Of course I declined to do so, and told him he was
bound."

This fully and entirely corroborates Parshall's version of
the ratification. Appellant does not allude to any condition in
confirming the agreement.

As a general rule, a party who becomes entitled to rescind an
agreement should restore to the other party what he has
received, or in other words, place him in *statu quo*. If this
ratification was conditional, as insisted, why did appellant,
if he intended to insist upon a breach of the agreement,
retain the $300 of Parshall's money received under the agree-
ment?

We do not see that he returned, or offered to return it, to
Parshall. Shall it be said that he shall have the land and
retain Parshall's money? May he treat the contract as bind-
ing and claim what he has received under it, for that purpose
only, and yet repudiate it so far as it binds him? Such can not
be equity.

Had appellant intended to avail himself of the conditional
ratification, he should have restored the money, or offered to do
so, when he attempted to repudiate the contract. And to have
done so, he should have acted within a reasonable time. He

could not lie by and permit Parshall to rest in supposed security for an unreasonable time and then repudiate the agreement to ratify. He should have acted within a reasonable time.

Again, we find that on the 21st of February, 1865, Paullin writes appellant and incloses him a deed to be executed to Parshall under the contract; and appellant in reply refuses to execute it, but places the refusal alone on the ground that Paullin had not conveyed the patent title to him. He does not, in the remotest manner, allude to the want of power on the part of Paullin to make the agreement or that he had refused to ratify it. He does not say, you were unauthorized to make the contract, and I therefore refuse to execute it, nor does he intimate any thing of the kind. He places his refusal on different grounds. Throughout this transaction, until it became apparent that he had not title, appellant recognized the contract as binding.

It is, however, said that it is not alleged in the bill that the contract was ratified by the receipt of a portion of the purchase money under the agreement. This does not matter. The bill alleges that appellant did ratify the agreement, and the receipt of the money was only evidence of the fact, and hence need not have been alleged. There is no force in this objection.

It is also urged that Parshall failed to meet his payments promptly as they fell due, but did not make them until some time afterward. Appellant does not seem to have notified him that he had rescinded the contract for that reason, or to have done any act indicating such a purpose, and Paullin received the money.

Nor can the fact that appellant notified Parshall not to pay the balance of the purchase money to Paullin, and his afterward paying it to him, in the least affect or impair his rights under the contract.

Under it he had the legal right to discharge himself by paying the money to either of the joint contractors. Nor could appellant change that right any more than he could any other provision it contained. That a payor or other obligor may pay

to either of several joint payees, and thereby become fully discharged, is a proposition so plain as to require the citation of no authority in its support. The only means of preventing it would have been by a properly framed bill for an injunction. There is no force in this objection.

We now come to the consideration of the question, whether Parshall has the right to insist upon a specific performance of the contract by receiving such title as appellant and Paullin have, with covenants which they agreed to make for title. Can they now insist that because they do not have such title as they agreed to sell that they are exonerated from the performance of their contract, and that Parshall shall only have a restoration of his money? It is clear, beyond question, that appellant and Paullin could not compel Parshall to perform the contract unless they could show that they were able to convey such a title as they had contracted to give. But in this case he is willing to risk their title and receive it as they hold it, with the covenants they agreed to make. That such is the rule of law seems to be apparent. Otherwise a party would have the right to insist on a rescission simply because he was unable to perform his agreement.

When parties enter into contracts they know that they do not have the option to rescind without the fault of the other party. This all business men know, and contract with a view to such a liability. The party who has performed or offered to perform his part of the agreement has the choice whether he will sue for and recover damages for a breach of the contract, or will insist upon its execution specifically, and take such a performance as the other party is capable of making.

While we have found no case which holds the vendee may compel a conveyance when the vendor has a defective title, being willing to rely upon such covenants for title as the vendor has agreed to give, yet many analogous cases may be cited which announce a rule that requires a specific performance. In the case of *Waters* v. *Travis*, 9 Johns. 450, a vendor, after entering into an agreement to sell the tract of land, sold and

conveyed a portion of the premises to an innocent purchaser. The vendee exercised the option of insisting upon a specific performance rather than resort to his remedy at law, and the court compelled the vendor to perform his contract, so far as he was able, by conveying to the vendee the portion he had not conveyed to the other purchaser. In Newland on Contracts, chap. 12, p. 228, it is said, that a vendee will be held to his bargain, notwithstanding the want of a usual, but not an absolutely necessary, step for perfecting the title of the vendor, particularly if the vendee knew of the objection at the time of the purchase, and yet accepted the title.

In the case of *Cotton* v. *Wilson*, 5 P. Wms. 190, it was *held* that the purchaser of an estate could not refuse to complete his contract because a will devising the estate to the vendors had not been proved in equity, although such proof was said to be usual, but not an essential step, because the purchaser had not insisted when he purchased, upon such proof, or that the heir should join the devisees in the conveyance.

In 2 Story's Eq. Jurisp., § 779, it is said, suits may also be brought by the purchaser for a specific performance, where the vendor is unable to make a complete title to all of the property sold, or where there has been a substantial misdescription in important particulars, or where the terms, as to the time and manner of performing the contract, have not been punctually or reasonably complied with by the vendor. In these and like cases, it would be unjust to permit the vendor to take advantage of his own wrong or default or misdescription, and courts of equity allow the purchaser an election, to proceed with the purchase *pro tanto*, or to abandon it altogether. Numerous other authorities might be referred to in support of the rules here announced; but these are deemed sufficient for their illustration. They clearly establish precedents for executing agreements in part, and in not permitting the vendor to set up and rely upon his own default or wrong as a defense.

Every day's observation teaches, that vendees accept conveyances of known defective titles, and rely alone on possession

and covenants for title. It is believed that this is a common usage. Nor is such a practice regarded as immoral or inequitable when fair and unaccompanied by fraud. In such a case, the vendor is willing to warrant a defective title, and the vendee is willing to risk it, with the covenants for title which the parties agree shall be inserted in the deed of conveyance. In fact, the covenants for title are inserted because the parties are not sure that it is perfect, and to indemnify the vendee against a failure of the title.

In this case, appellant and Paullin were willing to sell their title, and to covenant for title to the extent limited in their contract, and Parshall was willing to receive it, and they so agreed. And it is a familiar maxim of equity, that whatever is agreed to be done, and should be done, is considered as done. Then it was fairly agreed that the conveyance should be made by the vendors and received by the vendee, and, as the contract is not immoral or inequitable, why should it not be enforced as it is asked by the vendee, who alone could object to the imperfection of the title? He is willing to receive it, although defective. He is in possession and has been for many years, and, if the requirements of the statute of limitations have been observed, he can invoke its aid, as this defective title has become a complete shield against all outstanding titles, and if he has not obtained the statutory bar, or fails in the future to acquire it, he could then fall back on his covenants for title. This, we think, he has a right to choose and insist upon, rather than be left to his remedy at law, where, if there has been a large advance in the price of the land, he could not recover for that.

If the contract were rescinded and canceled, then the vendors would, if they acquired the bar of the statute, acquire all of the benefits growing out of the appreciation in the value of the land, and Parshall would but recover back his money, with six per cent interest, be required to account for rents and profits and allowed for improvements. He would thus be changed from a purchaser into a tenant, and to a money lender at a low rate of

interest, and for the reason only that appellant says his title is imperfect. He fails to set out the defect in his and Paullin's title, and hence we are left to rely alone on his conclusions as to its being defective. He does not show that they have no title or claim of title, which might present a different question. On the contrary, he asserts claim of title, and such title as to require Parshall to pay him rents and to surrender possession to him.

Whatever the misunderstanding or difficulties which may exist between appellant and Paullin as to their contract, it should not in the least affect Parshall. He has in nowise produced or contributed to them. He has fairly and faithfully performed his contract, not, perhaps, literally, but substantially, and has the right to compel a performance by the other parties.

As appellant is bound to warrant against patent titles, by his contract with Parshall, and as he must join in the specific performance, he is entitled, under the general prayer for relief, to a deed of conveyance from Paullin according to the terms of their contract. The decree of the court below should have required Paullin to make such a deed as is required by his contract with Harding. In reference to whatever title Mathews may hold, there is no decree, nor would it be proper to render any on the pleadings in the case. The decree of the court below is reversed and the cause remanded, the costs are equally divided between Harding and Paullin. The court below will require Paullin to execute to Harding and Mathews a deed in pursuance of and according to the terms of the agreement of the 13th of October, 1862.

*Decree reversed.*

The foregoing opinion was delivered at the September term, 1869. On the petition of the appellant, a rehearing was granted at the September term, 1870, whereupon the following additional opinion was delivered:

PER CURIAM: A rehearing was granted in this case because we became satisfied, on the petition for a rehearing, that the

decree of the court below should not have been reversed, or that Paullin should have been required to convey to Harding the undivided half of the premises, but that Harding should be left to seek such relief from Paullin as he may be disposed to pursue.   After an attentive consideration of the petition for a rehearing, we have failed to perceive that Parshall is not entitled to the relief granted, and we are still satisfied with the reasons given in the opinion previously filed.   It can not be held that Parshall shall suffer or be prevented from enforcing his contract against his vendors, because one of them has refused to keep his agreement with the other; and this is the ground for rescinding the agreement with Parshall, except a denial of authority to execute it, set up in the cross-bill.   We held in the former opinion that Paullin had authority to execute the contract, or, if not, that Harding ratified its execution.   We still adhere to the same conclusion.   The cross-bill was properly dismissed, for the reasons given, and the decree of the court below is affirmed, for reasons assigned in the opinion previously filed in this case.

*Decree affirmed.*