Ella S. Leonard for use of W. T. Alden, Appellee, v. Warren Springer, Appellant.

### Gen. No. 17,119.

1. FRAUD—*action survives.* By the express terms of R. S., c. 3, § 123, an action of fraud and deceit survives.

2. ASSIGNMENTS—*actions that survive are assignable.* Causes of action which under the law survive are assignable.

3. FRAUD—*action is assignable.* Where a person fraudulently induced to buy a worthless note secured by a trust deed of a leasehold interest sues a former owner of such interest in fraud and deceit, the action may be assigned.

4. BANKRUPTCY—*preference is only voidable.* Where an assignment of a cause of action constitutes an unlawful preference in bankruptcy under the Bankruptcy Act of 1898, § 60, the assignment is voidable only.

5. BANKRUPTCY—*preference not subject to collateral attack.* Where an assignment of a cause of action constitutes an unlawful preference in bankruptcy and no steps are taken in the bankruptcy court to set it aside, it is not subject to collateral attack by a defendant in an action of fraud by the assignor to the use of the assignee.

6. FRAUD—*action need not be prosecuted in the name of the assignee.* On an assignment of an action for fraud and deceit the action may be prosecuted in the name of the assignor for the use of the assignee.

7. FRAUD—*defendant need not have received value.* Where a person induced by fraud to purchase notes secured by a deed of trust of a leasehold interest sues a former owner of such interest in fraud and deceit, recovery may be had without showing that the defendant received anything of value from plaintiff for the notes purchased.

8. FRAUD—*evidence to show fraud where security of notes is worthless.* In an action of deceit it appeared that the defendant sold a worthless leasehold interest to his brother-in-law for an express consideration, but no consideration was paid. The property was sold to another for an express consideration of $100,000, who executed certain promissory notes secured by a deed of trust of the interest, setting out a consideration of $75,000, but no consideration was paid. In none of the instruments did it appear that only a leasehold interest was conveyed. The grantor of the deed of trust was insolvent and never intended to pay the notes. The notes, purchased from another party by plaintiff, had indorsements extending the time of payment in consideration of interest paid and to be paid. The defendant claimed the notes had been stolen from him. *Held,* a verdict for the plaintiff should be sustained.

9. BILLS AND NOTES—*when purchased before maturity.* Through a series of conveyances without consideration and tainted with fraud, a plaintiff purchased notes after the date of maturity secured by a worthless leasehold, and sued the owner of such interest in fraud and deceit. The notes bore indorsements extending the time of payment in consideration of interest paid and to be paid. The defendant and the person signing the indorsement testified they did not make or authorize it. *Held,* under the facts and circumstances, plaintiff was a purchaser of the notes before maturity.

10. APPEALS AND ERRORS—*when judgment may be entered nunc pro tunc.* Where an appellant dies subsequently to the time that a cause was taken under advisement by the appellate court, a judgment of affirmance may be entered *nunc pro tunc* as of a date prior to the death. *Certiorari* denied by Supreme Court (making opinion final).

Appeal from the Superior Court of Cook county; the HON. PAUL McWILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed November 14, 1912.

Stedman & Soelke, for appellant.

Alden, Latham & Young, for appellee; T. A. Sheehan, of counsel.

Mr. Presiding Justice Gridley delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court of Cook county for $6,208.33, rendered against Warren Springer in an action on the case for fraud and deceit. The action was originally commenced, April 6, 1899, by Ella S. Leonard, plaintiff, against said Springer and Charles Z. Miller. Springer demurred to the original declaration and Miller filed a plea of general issue. Plaintiff was given leave to file an amended declaration, consisting of one count, which she did, to which Springer again demurred. On June 4, 1900, the cause was dismissed as to Miller, the demurrer of Springer (hereinafter called defendant) to said amended declaration was sustained, and, plaintiff electing to stand by the same, judgment was rendered against her for costs. An appeal was taken to this court, where the judgment of the trial court sustaining said demurrer was affirmed. Leonard v. Springer, 98 Ill. App. 530. Thereupon plaintiff appealed to the Supreme Court, where the judgments of this court and the Superior Court were reversed and the cause remanded with directions to the Superior Court to overrule said demurrer. Leonard v. Springer, 197 Ill. 532. After the cause was redocketed in the Superior Court, leave was given plaintiff "to amend the record * * * by adding the name of W. T. Alden as usee, so that the name of plaintiff shall be Ella S. Leonard for use of W. T. Alden," and to file a second amended declaration, consisting of one count, which was filed on May 1, 1906. To this declaration defendant filed a plea of general issue and a further plea to the effect that the cause of action in said declaration was distinct and different from the cause of action in the original and first amended dec-

larations, and that the same did not accrue to the plaintiff within five years immediately prior to the filing thereof. A demurrer to this further plea was sustained by the court and no complaint is here made as to that ruling. In September, 1906, the cause was tried before a jury, resulting in a verdict in favor of plaintiff for $5,832.66, but this verdict was set aside and a new trial granted. In December, 1909, the cause was again tried before a jury, during which trial plaintiff was given leave to amend said declaration by increasing the *ad damnum* to $8,000. The jury assessed plaintiff's damages at $6,208.33, upon which verdict the court, on March 16, 1910, entered the judgment from which this appeal is taken.

The second amended declaration, on which the case was tried, contained some minor changes from the first amended declaration which is quite fully set forth in the opinion of the Supreme Court, Leonard v. Springer, 197 Ill. 533-535, and hence the allegations of the same need not be here set forth, except to mention that where in the former declaration she averred that "she applied to a broker to secure for her an investment," in the latter declaration she averred that being "desirous of exchanging certain * * * building stone of the value of $4,000 for good real estate securities, * * * for that purpose she inserted an advertisement in a Chicago newspaper and thereafter she was offered" the four $1,000 notes mentioned; that where in the former declaration she averred that relying on the truth of the statements, etc., "she purchased four of the notes, paying therefor $4,000," in the latter declaration she averred that "she exchanged her * * * building stone of a value of $4,000 for said four notes;" that in both declarations the four notes, each dated August 6, 1897, and each payable fifteen months after date (viz.: November 6, 1898) were set out in full, together with the trustee's certificate accompanying each; that in both declarations it was averred that the endorsements on the back of the

first and third notes, above the signature "Charles Z. Miller," were as follows: "For and in consideration of the interest being paid in full, the time is extended to May 1, A. D. 1899;" that in both declarations it was averred that the endorsement on the second $1,000 note, above said signature, was, "The interest having been paid I hereby extend this note for six months for value received," and the endorsement on the fourth note, above said signature was, "For and in consideration of the interest being paid in full I extend the principal to the 6th day of Feby. 1899."

The fraud complained of in plaintiff's declaration grew out of the purchase by plaintiff of said four $1,000 promissory notes. The circumstances under which these notes were executed were as follows: On November 24, 1888, Calvin DeWolf and wife executed to William E. Slosson, a lease of "Sub-lot four (4) in Ogden's subdivision of lot one (1) in block ninety-six (96) in School Section Addition to Chicago, in the County of Cook and State of Illinois," and otherwise known as No. 188 E. Monroe street, Chicago, for a term of ninety-nine years from January 1, 1889, for an annual rental of $3,000, payable quarterly. This lease was recorded November 27, 1888. On April 4, 1889, the lessee, Slosson, conveyed and quitclaimed all his interest in said lease and to the building on said premises to the defendant for the expressed consideration of one dollar. This instrument was recorded April 5, 1889. On July 29, 1897, the defendant and his wife quitclaimed to John Maginness "of the City of Boston, County of Suffolk and State of Massachusetts" all interest in said premises for the expressed consideration of $25,000. This instrument was recorded August 26, 1897. No mention was made in the instrument that the interest in the premises conveyed by defendant and wife was merely a leasehold interest. It appears from the evidence that no consideration was given by Maginness for the deed; that he was a brother-in-law of the defendant and, at the

time of the execution of the deed, instead of being a resident of Boston as stated, was connected with the LeMar Shoe Company, a concern engaged in the retail shoe business on the ground floor of No. 188 E. Monroe street, Chicago; that at this time the lease was of little value; that defendant was in arrears in the payment of ground rent in a large amount; that many of the offices in the building were untenanted, and that the expenses of running the building greatly exceeded the income therefrom.  On August 6, 1897, Maginness executed what purported to be a warranty deed, in which he was described as "a bachelor, of the city of Boston," etc., and in which it was stated that Maginness "for and in consideration of $100,000 * * * conveys and warrants to Charles Z. Miller, of the City of Chicago" said premises, "the grantor hereby conveying and warranting all his right, title and interest in the above described real estate."  No mention is made in this deed that that interest was but a leasehold interest in the premises.  This deed was recorded September 3, 1897.  It further appears from the evidence that no consideration whatsoever passed from Miller to Maginness or to any other person for the deed; that Miller never at any time took over the management of the building, and that he never collected any rents.  On the same day Miller, at the instigation of defendant, executed to the Chicago Title & Trust Company, a trust deed by which

"Charles Z. Miller, of Cook County, Illinois, for and in consideration of the sum of $75,000 in hand paid, conveys and warrants to Chicago Title & Trust Company, * * * trustee, the *following described real estate with the improvements thereon,* including all heating, gas and plumbing apparatus, and all other fixtures attached to said premises and everything appurtenant thereto, * * * to-wit:  Sub-lot four (4) in Ogden's subdivision of lot one (1) in block ninety-six (96), * * * otherwise known as No. 188 East Monroe street, with the 7 story and basement building thereon. * * *

In trust, nevertheless, for the purpose of securing performance of the covenants and agreements herein.''

This trust deed was given to secure the payment of certain notes aggregating $75,000 in amount, referred to in the deed as follows:

"Whereas, the grantor, Charles Z. Miller, *is justly indebted* upon his 83 principal promissory notes, bearing even date herewith, payable to the order of himself and by him duly endorsed and delivered, eleven for $500 each, and ten for $750 each, due one year after date, and sixty-two for $1,000 each ·due fifteen (15) months after date. All of said notes bearing interest at six (6) per cent per annum. The notes hereby secured being given *for part of the purchase money* on the above described premises.''

This trust deed made no reference to any lease or leasehold interest, but by its terms gave the impression that the same conveyed the land and the building thereon as security for said notes. Inasmuch as the consideration mentioned in the deed from Maginness to Miller was $100,000, the placing of the consideration for the trust deed at $75,000 tended to create the impression that $25,000 of the purchase price of $100,000 for the property mentioned had been paid. This trust deed was recorded September 11, 1897. All of the notes mentioned in said trust deed, including the four purchased by plaintiff, were payable at the office of the Chicago Title & Trust Company, Chicago, and contained the clause:

"This note is secured by a trust deed to Chicago Title & Trust Company, trustee, of even date herewith, on 7 story and basement building, No. 188 East Monroe street, city of Chicago, county of Cook, and state of Illinois,''

and on the back thereof contained the following printed indorsement:

"Trustee's certificate. This is to certify that this note is one of the following eighty-three notes for the aggregate amount of seventy-five thousand dollars. Eleven notes for five hundred dollars each, ten notes

for seven hundred and fifty dollars each, and sixty-two notes for one thousand dollars each; secured by trust deed to Chicago Title & Trust Company, trustee; recorded in the Recorder's Office of Cook County, Ill., as doc. No. 2586840.

> Chicago Title & Trust Company,
> By Wm. C. Niblack, Secretary.''

On September 28, 1897, an application was made to the Chicago Title & Trust Company for a guaranty policy of $20,000 on said leasehold estate by said LeMar Shoe Company, the company with which Maginness was then connected. The defendant Springer signed the application for said policy and the policy was afterwards issued and delivered to him. On two of the four notes which were subsequently purchased by plaintiff there was an indorsement on the back, as follows:

''This is one of the twenty notes referred to in our policy of title insurance No. 7767.

> Chicago Title & Trust Company,
> By Wm. C. Niblack, Secretary.''

It further appears from the evidence that at the time of the execution of said series of notes and trust deed Miller was insolvent; that he never at any time possessed property that could be reached by execution; that after signing said notes he delivered them all to the defendant and never had them in his possession afterwards; that he never paid anything on any of them, and that when he signed the trust deed he did not know whether it conveyed a leasehold estate or a fee.

The circumstances under which plaintiff acquired said four $1,000 notes, as disclosed from her testimony, were substantially as follows: During the middle and latter part of the year 1898, plaintiff was connected with the advertising department of a Chicago newspaper. She resided at the home of Charles R. Overman, who was in the stone business, trading under the name of the Graham Stone Company (incorpo-

rated). Overman was indebted to plaintiff in a sum in excess of $4,000. He claimed to be the owner of about 10,000 feet of plain and ornamented cement building stone, located in the yards of the Lake Shore and Michigan Southern Railway Company at Forty-third and State streets, Chicago, and having a value, as claimed, considerably in excess of $4,000. In July or August he gave plaintiff a bill of sale of this stone in consideration of the cancellation of his indebtedness to plaintiff. In November, 1898, plaintiff inserted a blind advertisement in certain Chicago newspapers, offering said stone for sale. A man giving his name as C. W. Comstock answered the advertisement and plaintiff wrote him to call on her. He did so, and showed her a $1,000 note which he said he would like to exchange for some of the stone. A day or two afterwards he again called on plaintiff and showed her four $1,000 notes, which he said he might exchange for the stone. He gave plaintiff a memorandum of the deed from Maginness to Miller and the trust deed from Miller to the Chicago Title & Trust Co., told plaintiff to investigate the security back of the notes, and left one of the notes with her, taking a receipt therefor. Plaintiff, in turn, gave him an inventory of the stone and told him where it was located. Plaintiff testified that she subsequently made an investigation as to the security back of the notes; that she showed the note to the cashier of the Corn Exchange bank; that she called at the office of the Chicago Title & Trust Co. to see Mr. Niblack, but did not find him in; that she went to the recorder's office and ascertained that the deeds, of which Comstock had given her a memorandum, had been recorded; that she went to Comstock's office and saw his name on the door; that she looked at the building at No. 188 E. Monroe street, saw that the building itself "was not of much account," but that she supposed that the trust deed covered the land as well as the building. Within two or three days Comstock again called on plaintiff in company with a man named

Bauer. The result of this call was that plaintiff during the latter part of November, 1898, (that is, subsequent to the maturity of said four $1,000 notes as originally written but prior to the maturity thereof as extended by indorsement thereon) traded the stone for said notes and $300 in cash, giving Bauer an inventory and bill of sale of the·stone, since which time plaintiff never again saw either Comstock or Bauer. Neither one of them was a witness at the trial. Plaintiff further testified that at the time Comstock first showed her the four $1,000 notes, as well as at the time of the consummation of the trade, said notes had indorsed on the back thereof the respective indorsements (as charged in the declaration and as above set forth) relative to the extension of time of payment of said notes in consideration of the interest having been paid in full; that at one of the interviews she had with Comstock "it was pointed out to me that one reason why the notes ought to be a good investment was that the interest had been kept paid up." The evidence does not disclose who made the indorsements extending the time of payment of said notes. Both Miller and defendant testified they never paid any interest on the notes and did not make or authorize said indorsements. Plaintiff further testified that in January, 1899, she called on Miller and asked him if he intended to pay said notes when they became due; that he replied that "he never intended to pay them and that when they were made he did not expect to pay them," and that at this interview she for the first time learned that said trust deed was only on said leasehold estate.

On January 13, 1902, plaintiff by written instrument assigned all her right, title and interest in and to the present action (then pending) against the defendant to W. T. Alden, "a member of the law firm of Alden, Latham & Young," and also assigned to said Alden said four notes, and in said instrument of assignment directed said Alden out of the proceeds of said litiga-

tion on said notes "to pay all court costs   *   *   *; second, to pay said Alden, Latham & Young any and all attorney's fees that may be due them by me; third, to pay any and all balance arising from said litigation to one Caroline L. Overman, wife of Charles R. Overman." On April 5, 1902, plaintiff filed a petition in bankruptcy in the district court of the United States for the district of New Jersey; she was duly adjudicated a bankrupt and the order of her discharge was entered June 9, 1902. Her cause of action against defendant was not scheduled in the bankruptcy court, and for the reason, as she testified, that the same was not an asset of hers as she had previously assigned the same to Alden and had no interest therein.

The defendant Springer testified that the four notes in question were never negotiated by him; that they were in his possession at one time together with a number of others of the same series; that the four notes together with other notes, aggregating in amount $40,000, were stolen from his desk by a man named Curry; and that when the four notes were in his possession there was no indorsement on the back of any of them to the effect that the interest had been paid.

Counsel for defendant, in urging a reversal of the judgment, contend that an action of fraud and deceit cannot be assigned, and that it is not such an action as survives under the statutes of this state. By the express terms of section 122 of chapter 3 of our statutes (Hurd's 1909) it is provided that "all actions for fraud and deceit" survive. In Selden v. Illinois Trust & Savings Bank, 239 Ill. 67, 78, it is said: "As a general rule, assignability and survivability of causes of action are convertible terms." And the rule seems to be quite general, leaving out of view questions of public policy, that causes of action, which under the law survive, are assignable. 2 Am. & Eng. Ency. Law (2nd Ed.), p. 1017. We see no reason why, under the facts of this case, the general rule as to the assignability of causes of action is not here applicable,

and we, therefore, cannot agree with the contention of counsel. Neither can we agree with counsel that when plaintiff filed her petition in bankruptcy on April 5, 1902, her right of action against defendant passed to her trustee in bankruptcy. Plaintiff's assignment to Alden is dated January 13, 1902, and, conceding for the sake of the argument that this constituted an unlawful preference, the most that can be said in favor of counsel's position is that such assignment was only *voidable* under section 60 of the Bankruptcy Act of 1898. It does not appear that any steps were taken in the Bankruptcy court to set aside the assignment as being a preferential one, and it is not subject to such a collateral attack in this action. See also the cases of Sawtelle v. Rollins, 23 Me. 196, and Hayes v. Pike, 17 N. H. 564.

It is also contended that after the date of said assignment to Alden the action should have been prosecuted in the name of Alden, and not in the name of plaintiff for the use of Alden. The contention is without merit. City of Carlyle v. Carlyle Water, Light & Power Co., 140 Ill. 445, 452; North Chicago St. R. Co. v. Ackley, 171 Ill. 100, 120; Foreman Shoe Co. v. F. M. Lewis & Co., 191 Ill. 155, 157; Mutual Life Ins. Co. v. Allen, 212 Ill. 134, 139.

It is further contended that it was not shown by a preponderance of the evidence that plaintiff was the owner of the stone, which as she testified she sold to Comstock for said notes, or that she gave anything of value for the notes, and that, therefore, she was not damaged because the notes proved to be worthless. No good purpose would be served in here setting forth in detail the testimony of the various witnesses on these questions. They were questions for the jury to pass upon, and we cannot say that the entire record shows that plaintiff was not an innocent purchaser of the notes for value. Neither can we say that the entire record shows that the notes in question were stolen from the defendant and that plaintiff had notice of

that fact before she purchased them, as contended for by counsel. These, also, were questions for the jury under all the evidence.

It is further contended that plaintiff was not a purchaser of the notes before the maturity thereof, and for the reasons that, according to plaintiff's testimony, she did not purchase them of Comstock until the latter part of November, 1898, that the notes, according to their face, were due fifteen months after August 6, 1897, or on November 6, 1898, and that both Springer and Miller testified that they did not make or authorize the indorsement above mentioned extending the time of payment. Plaintiff testified that when she purchased the notes of Comstock said indorsements were on the back of the notes, and there was no evidence to the contrary. We think that under all the facts and circumstances of this case plaintiff must be regarded as a purchaser of said notes before maturity.

Counsel contend that the trial court erred in refusing to admit certain offered testimony and in giving and refusing to give certain instructions. We do not think any error was committed in these particulars prejudicial to defendant.

After a careful examination of the voluminous record we have reached the conclusion that the judgment of the trial court should be affirmed. While the evidence did not show that the defendant received anything of value from plaintiff for the notes purchased by her, this was not necessary to be proved to entitle plaintiff to recover. Leonard v. Springer, 197 Ill. 532, 539. After this cause was taken under advisement by this court (February 24, 1911), the appellant, Warren Springer, departed this life on February 8, 1912, and on October 3, 1912, his death was suggested of record in this court. On that day, on motion of the attorneys for appellee, it was ordered that the judgment of this court, when entered, be entered *nunc pro tunc* as of a date prior to February 8, 1912. Danforth v. Danforth,

111 Ill. 236; Seymour v. O. S. Richardson Fueling Co., 205 Ill. 77, 86. Accordingly the judgment of the Superior Court of Cook county will be affirmed, *nunc pro tunc,* as of February 1, 1912.

*Affirmed.*