## Citizens Securities and Investment Company, Appellant, v. F. R. Dennis, Appellee.

### Gen. No. 29,236.

1. JUDGMENTS—*jurisdiction to enter judgment nunc pro tunc on death of party.* To give a court jurisdiction to enter a judgment *nunc pro tunc* after the death of one of the parties it is not necessary that the case should have been taken under advisement before such death but only that the cause was in such condition at that time that a final judgment could then have been entered immediately.

2. APPEAL AND ERROR—*filing brief as giving Appellate Court jurisdiction to render judgment after death of party filing brief.* By the filing of a brief by defendant the Appellate Court acquired jurisdiction of him and, though he died before the reply brief of plaintiff was due and the oral arguments were set for hearing at a subsequent date, the court had full power to render a judgment before defendant's death as it could have disregarded its rules as to reply brief and oral arguments, and a motion of defendant's counsel to abate the action will be denied and judgment rendered *nunc pro tunc.*

3. NEGOTIABLE INSTRUMENTS—*allegation of waiver of presentment and notice of dishonor.* In an action against the indorser of prom-

issory notes an allegation in the statement of claim that defendant "acknowledged to the said plaintiff his liabilities thereon as indorsers thereof" is a sufficient pleading that defendant waived presentment and notice of dishonor. .

4. NEGOTIABLE INSTRUMENTS—*allegation of waiver of presentment and notice of dishonor.* A waiver of presentment and notice of dishonor by the indorser of promissory notes was shown by allegations in plaintiff's statement of claim to the effect that, after the notes became due, defendant, well knowing the facts, stated to plaintiff's president and its secretary-treasurer that if plaintiff would discount certain notes for defendant he would pay $5,000 on the principal of the notes in question as he realized that he would have to pay them sooner or later.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. CHARLES F. McKINLEY, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1924. Reversed and remanded. Opinion filed March 9, 1925.

MOSES, ROSENTHAL & KENNEDY, for appellant; WALTER H. MOSES, of counsel.

CATTELL & WALDRON, for appellee; RALPH E. BROWN, of counsel.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by the plaintiff, the Citizens Securities and Investment Company, from a judgment in the municipal court of Chicago, in favor of the defendant, F. R. Dennis, in an action brought by the plaintiff on five promissory notes payable to and indorsed by the defendant.

The first question to be considered is a preliminary question presented by a motion of counsel for the defendant that the action should abate because of the death of the defendant, which occurred July 14, 1924. Prior to that date, namely, June 3, 1924, counsel for the plaintiff filed the brief and abstract of the plaintiff in this appeal, and June 30, 1924, counsel for the

defendant filed the brief of the defendant. July 7, 1924, on motion of counsel for the plaintiff, leave was granted to the plaintiff to file its reply brief on or before August 26, 1924. July 25, 1924, counsel for the plaintiff filed the reply brief of the plaintiff. The cause was set on the oral argument calendar to be argued on October 27, 1924. No oral argument was then made, however, on behalf of either party.

Counsel for the plaintiff oppose the motion for the abatement of the action, and contend that the judgment of this court should be entered *nunc pro tunc* as of July 14, 1924.

In Illinois, as we interpret the authorities, the rule is that where one of the parties dies after an appeal has been taken, a judgment *nunc pro tunc* may be entered as of a date prior to the death of the party provided that the court had acquired jurisdiction and rightful authority to render a judgment on that date. *Danforth v. Danforth,* 111 Ill. 236, 237; *Seymour v. Richardson Fueling Co.,* 205 Ill. 77, 86; *Leonard v. Springer,* 174 Ill. App. 516, 523. This statement of the rule is in substantial conformity with the general rule in regard to the power of a court to enter a judgment *nunc pro tunc.* The general rule, in the form most frequently announced, is that the power can be exercised "only in cases where the cause was ripe for judgment, that is, where the case was in such condition at the date to which the judgment is to relate back that a final judgment could then have been entered immediately." 1 Black on Judgments, sec. 133, pp. 150, 151; 23 Cyc. p. 840; 34 C. J., sec. 209, p. 72.

The underlying principle on which judgments *nunc pro tunc* are sustained is that such action is necessary in furtherance of justice and in order to save a party from unfair prejudice through a delay caused by the act of the court or the course of judicial procedure. In other words, the practice is intended merely to

make sure that one shall not suffer for an event which he could not avoid. *In re Finks,* 224 Fed. 92, 93.

In the case at bar counsel for the defendant contend that the record is not in such shape as would justify the court in entering a judgment *nunc pro tunc* prior to the death of the defendant; that the practice of entering such judgment in Illinois "has obtained only in cases where the death of one of the parties occurred after the cause had been heard and taken under advisement"; that in the case of *Danforth v. Danforth, supra,* the cause had been argued and submitted to this court before the death of the party in that case; that in the case of *Seymour v. Richardson Fueling Co., supra,* and the case of *Leonard v. Springer, supra,* the cause had been taken under advisement by the court before the death of the parties in those cases.

We do not agree with the contention of counsel for the defendant that a judgment of *nunc pro tunc* can only be entered "where the death of one of the parties occurred after the cause had been heard and taken under advisement." The proper test, in our opinion, is whether the cause was ready for judgment prior to the death of the party; that is whether in the language of Black "the cause was in such condition at the date to which the judgment is to relate back that a final judgment could then have been entered immediately." It is true that in the cases referred to by counsel for the defendant, namely, *Danforth v. Danforth, supra, Seymour v. Richardson Fueling Co., supra,* and *Leonard v. Springer, supra,* the causes were in the condition stated by counsel when the judgments of *nunc pro tunc* were entered. But in none of those cases was it held, either expressly or impliedly, that a judgment *nunc pro tunc* could be entered, as is contended by counsel for the defendant, only "where the death of one of the parties occurred after the cause had been heard and taken

under advisement." On the contrary, in the case of *Danforth v. Danforth, supra,* which is the leading case in Illinois, the court explicitly stated (p. 240):

"Here, the court, before taking any steps, was clothed, by the act of the parties and the law, with full jurisdiction and rightful authority to render the judgment it did. Did the death of the appellee,—not brought to the notice of the court by plea, suggestion, or otherwise,—deprive it of such jurisdiction lawfully acquired? We think not."

Applying the principle contained in this language to the case at bar the question is whether this court "was clothed, by the act of the parties and the law, with full jurisdiction and rightful authority to render" a judgment prior to the death of the defendant. The subject-matter of the cause was within the jurisdiction of the court, and the court acquired jurisdiction of the defendant before his death when he filed his brief. The filing of his brief by the defendant was the equivalent of a joinder in error. *Finlen v. Foster,* 211 Ill. App. 609, 620, 621. In this state of the record this court had full power to have rendered a judgment before the death of the defendant, notwithstanding the fact that the reply brief of the plaintiff was due to be filed on a date subsequent to the death of the defendant, and that the oral arguments were set for hearing on a date subsequent to the death of the defendant. The rules of court under which the reply brief of the plaintiff and the oral arguments on behalf of both the plaintiff and the defendant were permissible could have been disregarded by this court unless such action of the court would have been likely to result in injustice to the parties. *Mix v. Chandler,* 44 Ill. 174, 175; *Field v. Chicago, D. & V. R. Co.,* 68 Ill. 367, 369; *Ettinghausen v. Marx,* 86 Ill. 475, 476; *Hunt v. Pronger,* 126 Ill. App. 403, 407. A court is the best interpreter of its own rules. *Mix v. Chandler, supra* (p. 175). We do not think that

the rights of either party would have been violated if the court had decided the case and had entered judgment before the reply brief of the plaintiff was filed and before the oral arguments were heard. Only one question is involved on the appeal, and that is whether the plaintiff's statement of claim is sufficient. That question was thoroughly argued in the briefs filed by both the plaintiff and the defendant before the death of the defendant. The reply brief and the oral arguments were not essential.

In our opinion this court had the power to decide the case and enter judgment at any time after the date on which the brief of the defendant was filed, namely, June 30, 1924, and before the date on which the defendant died, namely, July 14, 1924.

The motion of counsel for the defendant to abate the action is denied; and the judgment that we shall render will be entered *nunc pro tunc* as of July 13, 1924. We think that such action should be taken in furtherance of justice.

On the merits of the case, as we have previously stated, the only question to be decided is whether the plaintiff's statement of claim is sufficient. The statement of claim in substance is as follows:

"Plaintiff alleges that it is the holder in due course of five (5) certain notes made by M. K. Higginbottom and Grace V. Higginbottom jointly, payable to the order of F. R. Dennis, defendant herein, and endorsed in blank by said F. R. Dennis, defendant herein; that each note was delivered to this plaintiff for a valuable consideration before maturity by the said F. R. Dennis, defendant herein, and that the said plaintiff took the said notes in good faith in the ordinary course of its business.

"Plaintiff further states that the said notes are in words and figures as follows, to-wit:" (The notes are set out in full. It is expressly provided in each note that it is payable at 640-29 South LaSalle street.)

"Plaintiff further alleges that 640-29 South La-

Salle street, Chicago, Illinois, is the place of business of this plaintiff, the Citizens Securities and Investment Company; that on the dates of the respective maturities of each and all of said notes hereinabove set forth the said plaintiff was the legal holder thereof and had the same and each of them respectively in its possession at its place of business, 640–29 South LaSalle street, Chicago, Illinois, in each instance during the entire day of maturity and was ready to demand and receive payment of the respective notes from the aforesaid makers thereof at 640–29 South LaSalle street, Chicago, Illinois, the place of payment of each of said notes.

"Plaintiff further alleges that said M. K. Higginbottom and Grace V. Higginbottom knew that the plaintiff was the legal holder of the said notes and each of them at the date of the respective maturities thereof and knew that the office and place of business of the plaintiff on said dates was at 640–29 South LaSalle street, Chicago, Illinois; but that neither the said M. K. Higginbottom nor the said Grace V. Higginbottom appeared at the said place of payment of said notes at the respective dates of the maturities thereof or any of them, and neither the said M. K. Higginbottom nor the said Grace V. Higginbottom had any moneys at the said 640–29 South LaSalle street, Chicago, Illinois, at the dates of the respective maturity of said notes.

"Plaintiff further alleges that no notice of dishonor was given the said defendant by the said plaintiff regarding any of the said notes hereinabove set forth.

"Plaintiff further states that it is at the present time the holder of all of said notes hereinabove described, and that the same have not been paid either by M. K. Higginbottom, Grace V. Higginbottom or F. R. Dennis, the defendant herein.

"Plaintiff further alleges that after the maturity of all of the said notes said defendant with full knowledge of the facts hereinabove set forth, on or about the 31st day of January, A. D. 1923, acknowledged

314    APPELLATE COURTS OF ILLINOIS.

Citizens Securities and Investment Co. v. Dennis, 236 Ill. App. 307.

to the said plaintiff his liabilities thereon as endorser thereof.

"Plaintiff further alleges that on, to-wit, the 31st day of January, A. D. 1923, after all of said notes had matured and become due and payable as appears from the faces thereof, the said defendant, F. R. Dennis, well knowing the facts hereinabove set forth regarding the said notes, the said defendant stated to one A. B. Keller, the president at that time of this plaintiff, and one L. H. Keller, secretary-treasurer thereof at that time, that if the said plaintiff would discount five certain promissory notes for Five Thousand Dollars ($5,000) each for the said defendant, he would pay the said plaintiff the sum of, to-wit, Five Thousand Dollars ($5,000) to apply on the principal of the said Higginbottom notes hereinabove set forth on which he appears as endorser, as he, the said defendant, realized that he would have to pay them sooner or later.

"Plaintiff further states that subsequently thereto the said defendant, F. R. Dennis, requested the said plaintiff herein that it write him at his business address a letter demanding payment from him as endorser of the said Higginbottom notes hereinabove set forth, on which he appeared as endorser, so that he the said defendant, could show the said letter to the said M. K. Higginbottom, and thereby the said Higginbottom would learn that the said plaintiff herein was pressing him, the said defendant, F. R. Dennis, for payment of the said notes.

"Plaintiff further states that although he has made repeated demands for payment upon the makers of the said notes, M. K. Higginbottom and Grace V. Higginbottom, and upon the endorser thereof, F. R. Dennis, the defendant herein, the said notes have not been paid, nor any part thereof, to the damage of the plaintiff in the sum of Fifteen Thousand Dollars ($15,000.00)."

The defendant made a motion to strike the statement of claim from the files. The court sustained the motion and dismissed the suit.

According to the practice in the municipal court,

the case at bar is a case of the first class; but under rule 14 of the municipal court, which is incorporated in the record, pleadings in cases of the first class shall be the same as in cases of the fourth class. In regard to pleadings in cases of the fourth class, section 40 of the Municipal Court Act [Cahill's St. 1923, ch. 37, ¶ 428] provides in substance that if the suit be upon a contract, express or implied, the statement of claim of cases of the fourth class shall consist of a statement of the account or of the nature of the demand and such further information as will reasonably inform the defendant of the nature of the case he is called upon to defend.

Counsel for the defendant maintain that a statement of claim, even in a case of the fourth class, must state a cause of action when the sufficiency of the statement is questioned before trial; and that the statement of claim in the case at bar does not state a cause of action. Both counsel for the defendant and counsel for the plaintiff have extensively argued and reviewed the decisions in Illinois bearing on the question whether a statement of claim of the fourth class must state a cause of action when the sufficiency of the statement is questioned before trial. It will not be necessary, however, to determine this question as we are of the opinion that the statement of claim states a cause of action even if tested by the rules at common law. The rules at common law, in modern practice, do not require that the precise words employed in approved precedents should be used in pleadings. *Miller v. Blow,* 68 Ill. 304. "The tendency of courts in modern times has been as far as possible," said the court in the case of *Miller v. Blow, supra* (p. 308), "to dispense with mere technical forms, so that there is enough to enable justice to be fully and fairly administered."

In the case of *Miller v. S. S. Kresge Co.,* 306 Ill. 104, the court said (p. 107):

"It is not altogether easy to draw with precision the line on one side of which will fall declarations which, because of the generality of their language, state no cause of action, and on the other side declarations which, for the same reason, defectively state a cause of action. The main purpose of a pleading in courts of law is accomplished when, by reasonably intelligible allegations, the opposing party is advised of the case to be made against him."

Counsel for the defendant contend that the statement of claim is fatally defective because it fails to allege that the notes were presented to the makers at maturity, and fails to allege facts which sufficiently show that the failure to make such presentment was waived by the defendant; that the statement of claim alleges that no notice of dishonor of the notes was given to the defendant, and fails to allege facts which sufficiently show that the defendant waived notice of dishonor.

Counsel for the plaintiff contend that the allegations in the statement of claim to the effect that at their maturity the notes were at 640–29 South La-Salle street, in the City of Chicago, the place of payment designated in the notes, are sufficient to show a presentment of the notes to the makers; and that there are also allegations in the statement of claim that are sufficient to show a waiver by the defendant of both presentment and notice of dishonor.

Without deciding the question whether the allegations in the statement of claim are sufficient to show such a presentment of the notes as would charge the defendant, the indorser of the notes, we are of the opinion that the allegations in the statement of claim are sufficient to show a waiver by the defendant of both presentment and notice of dishonor.

It is contended by counsel for the defendant that the statement of claim does not "charge directly or indirectly that any of the acts or all of the acts" of

the defendant "taken together, either constituted or were construed or treated by" the plaintiff "as a waiver of presentment, demand for payment, or dishonor"; that, "in other words no waiver is either pleaded or shown."

It is true that the word "waiver" is not used in the statement of claim, but the facts alleged are sufficient to show waiver. Counsel for the defendant have cited no authorities that hold that waiver must be pleaded in terms. We are of the opinion that under the rules of pleading, waiver is sufficiently pleaded when the facts alleged show waiver. By analogy this conclusion is justified by the rule in regard to the pleading of negligence. In the case of *Miller v. S. S. Kresge Co., supra,* the court said (p. 106):

"It is not necessary to explicitly say of the defendant that he was guilty of negligence. It is sufficient if the facts stated are such as to raise a duty and show a failure to perform that duty and a resulting injury from which the law will attach to such failure of duty the charge of negligence."

Presentment may be waived under the Negotiable Instruments Act. By section 82 of that Act it is expressly provided that "presentment for payment is dispensed with * * * by waiver of presentment, express or implied." (Cahill's St. 1923, ch. 98, p. 2365.)

Notice of dishonor may also be waived under the Negotiable Instruments Act. By section 108 of that Act it is expressly provided that "Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." (Cahill's St. 1923, ch. 98, p. 2367.)

Facts and circumstances which may constitute a waiver are defined in the case of *Curtiss v. Martin,* 20 Ill. 557, which is the leading case in Illinois. In

that case it was insisted that the trial court erred in admitting the following letter written by the defendant, who was an indorser, to the plaintiffs (pp. 568, 569):

"Your favor of the 4th instant was duly received and contents noted. No one can regret the course things have taken more than the writer of this, and I deem it unnecessary to multiply words with you, but when the proper time comes, I will make *square work;* at present we are completely tied up, and cannot ever pay the bank what we owe her in her own notes, as an attachment has been issued against the bank as a foreign corporation. It will depend on what course the bank pursues towards us, *what time* I shall get in *proper position;* but rest assured the time will come, and now take notice—I wish you to write me immediately upon receipt of this, stating the exact amount of N. Hope notes you have on hand, received from me, which you have never circulated; state also that you must hold them as collateral until some arrangement is made about that bill; without going into particulars, also at what price the whole or any part of them can be sold in Pittsburgh, and in that letter state nothing else. I wish to show that letter to Mitchel, who knows nothing of my arrangement with you, and it is best as things are now that he should not. The $9,000 N. H. was charged to me, and I wish to make a return of what was not used, and although I cannot command the same notes, I can obtain them from other sources. Be discreet, and keep your own councils, and by so doing I trust you will promote your own interests as well as mine. I think you had better not correspond with St. John on the subject. I shall come to Pittsburgh as soon as I can leave New York. Please let me hear from you soon."

In holding that this letter was admissible the court said (pp. 572, 573):

"It is insisted that the court erred in admitting the letter of defendant, written to Warrick Martin & Co., from New York, under date of the 8th of January, 1848, and mailed to their address at Pittsburgh on

the same day.    The materiality of this letter under the issue will depend upon whether a subsequent promise or agreement to pay by the drawer of a bill made to the drawee or holder, who had failed to present it for acceptance or payment, waives the right to insist that he is discharged from liability on account of such failure to present.    It is said by Chitty, in his treatise on bills, that 'The consequences, however, of a neglect to give notice of nonpayment of a bill or note, or to protest a foreign bill, may be waived by the person entitled to take advantage of them. Thus, it has been decided that a payment of a part, or a promise to pay the whole or part, or to see it paid, or an acknowledgment that it must be paid, or a promise that he will set the matter to rights, or a qualified promise, or a mere unaccepted offer of composition made by the person insisting on a want of notice, after he was aware of the laches, to the holder of a bill, amounts to a waiver of the consequence of the laches of the holder, and admits his right of action.    Where there has not been an express waiver of notice of dishonor, *facts implying* a waiver must be left to the jury.'    p. 501.    In this letter there are expressions which clearly imply a promise to pay the bills held by the plaintiff, and it was for that reason proper evidence to go to the jury.''

In the case of *Tobey v. Berly,* 26 Ill. 426, the defendant, an indorser on two notes, after being informed that one of the notes had not been paid, wrote the following letter to the plaintiff (p. 429) :

''Yours of the 19th was received in my absence, and I hasten to answer on my return.    I was entirely ignorant of the note being protested, as no notice was sent me.    I paid two notes previous to that, which I suppose was the cause of Miss Williams not informing me of her inability to meet that.    I found their business in a bad fix.    In settling up their business they have taken notes, and not the first one that has come due has been paid, although they are considered good.    As soon as the notes with my indorsement are presented to me, I will see that they are paid.    I can-

not sign any more notes until I see that they have enough to hold me harmless.''

In holding that the promise by the defendant to pay the notes when presented with his indorsement amounted to a waiver of demand and notice, the court said (p. 431):

''The declaration in this case averred the insolvency of the makers. If, then, in cases under the law merchant, the law will presume against an indorser who is entitled to demand and notice before he is liable, that he has waived these conditions which make him liable, by a subsequent promise to pay, with a knowledge of the facts, we see no reason why the same presumption should not be indulged in a case arising under our statute. The promise to pay the notes when presented with his indorsement, as shown by the defendant's letter, amounts in law to a waiver of demand and notice, and of proof also of the insolvency of the makers. We therefore, are of opinion that when a man against whom there is a demand promises to pay it, for the necessary facilitation of business transactions between man and man, everything must be presumed against him. That the promise of the defendant in his letter justifies the presumption that he well knew the irresponsibility of the makers of the note, and that he honestly ought to pay the debt, and amounts to a waiver of proof of demand, notice, and of the insolvency of the makers.'' The case of *Curtiss v. Martin, supra,* was cited as authority by the court.

In the case of *Givens v. Merchants' Nat. Bank of St. Louis,* 85 Ill. 442, the court said (pp. 443, 444):

''We understand the law in that State to be, as it is recognized in many of the other States and is laid down in text books, that the consequences of a neglect to give notice of nonpayment of a bill or note may be *waived* by the person entitled to take advantage of them, and that such *waiver* may be presumed from a promise, made after maturity, to pay the note, with full knowledge of the facts, or under circumstances from which it is to be inferred the party ought

to have had full knowledge of the facts."

In the case of *Wing v. Beach,* 31 Ill. App. 78, speaking of waiver by an indorser, the court said (p. 85):

"Waiver might be either express or implied from the circumstances—as by payment in part or an absolute promise to pay, made with knowledge of all the material facts operating to discharge him as indorser."

Counsel for the defendant maintain that the case of *Curtiss v. Martin, supra,* has no application under the present Negotiable Instruments Act. That case, however, has been followed by the case of *Stewart v. Soenksen,* 173 Ill. App. 1, which was decided under the present Negotiable Instruments Act.

In the case of *Stewart v. Soenksen, supra,* section 108 of the Negotiable Instruments Act, providing that notice of dishonor may be waived, was considered by the court and the court said (p. 3) that "such waiver may be implied from a variety of facts and circumstances." The court quoted with approval the following language from *Curtiss v. Martin, supra* (pp. 3, 4):

"A promise to pay the whole or part, or to see it paid, or an acknowledgment that it must be paid, or a promise that he will set the matter to rights, or a qualified promise, or a mere unaccepted offer of composition, made by the person insisting on a want of notice after he was aware of the laches, to the holder of a bill, amounts to a waiver of the consequences of the laches of the holder, and admits his right of action."

The court also cited with approval (p. 4) the cases of *Tobey v. Berly, supra; Givens v. Merchants' Nat. Bank of St. Louis, supra; Wing v. Beach, supra.*

It is contended by counsel for the defendant that the allegation in the statement of claim that after the maturity of the note the defendant "acknowledged to the said plaintiff his liabilities thereon as indorser

322 APPELLATE COURTS OF ILLINOIS.

Citizens Securities and Investment Co. v. Dennis, 236 Ill. App. 307.

thereof" merely states a conclusion of the pleader and not a fact.

We think that the allegation is a conclusion of fact, and that according to the rules of pleading the allegation is sufficient. It is permissible to plead a conclusion of fact, as such a conclusion is the equivalent of an ultimate fact.

The rule is that only ultimate facts should be pleaded, and this means the final and resulting facts, reached by processes of logical reasoning from the detailed or probative facts. 21 R. C. L., section 3, p. 438.

In the case of *Brown v. City of Aurora*, 109 Ill. 165, it was held (p. 167) that ultimate facts "are, when considered with reference to the facts or evidence by which they are established or proved, but the logical results of the proofs, or, in other words, mere *conclusions of fact.*" To the same effect are the cases of *Caywood v. Farrell*, 175 Ill. 480, 482, and *Laughlin v. Norton*, 267 Ill. 476, 484.

To state the facts from which the conclusion of fact averred in the allegation in controversy is derived, would require a statement of evidentiary facts.

It is improper pleading to allege evidentiary facts. *Harding v. Parshall*, 56 Ill. 219, 223; 21 R. C. L., sec. 3, p. 438. In the case of *Harding v. Parshall, supra,* the court held (p. 226) that an allegation that a "contract was duly ratified" by the defendant was sufficient.

In the case of *Matthiessen v. Duntley*, 307 Ill. 36, it was held (pp. 39, 40) that an allegation in an affidavit of merits that there was no consideration was sufficient.

In the case of *Chicago City Ry. Co. v. Jennings,* 157 Ill. 274, the following allegations were held sufficient: that the defendant "carelessly and improperly drove and managed the motor truck"; that the plaintiff "with all due care and diligence, was then and there riding in his carriage."

Independently of the question whether the allegation in controversy constitutes correct pleading, we are of the opinion that there are other allegations which show a waiver by the defendant of both presentment and notice of dishonor.    The other allegations are as follows:

"Plaintiff further alleges that on, to-wit, the 31st day of January, A. D. 1923, after all of said notes had matured and become due and payable as appears from the faces thereof, the said defendant, F. R. Dennis, well knowing the facts hereinabove set forth regarding the said notes, the said defendant stated to one A. B. Keller, the president at that time of this plaintiff, and one L. H. Keller, secretary-treasurer thereof at that time, that if the said plaintiff would discount five certain promissory notes for Five Thousand Dollars ($5,000) each for the said defendant, he would pay the said plaintiff the sum of, to-wit, Five Thousand Dollars ($5,000) to apply on the principal of the said Higginbottom notes hereinabove set forth on which he appears as indorser, as he, the said defendant, realized that he would have to pay them sooner or later."

These allegations, in our opinion, bring the case at bar clearly within the rule announced in the case of *Curtiss v. Martin, supra.*    They show a promise to pay a part of the notes, and implied acknowledgment that the notes must be paid, a qualified promise to pay the notes, and an offer of composition.

Counsel for the defendant cite numerous authorities from other States in support of their contention that the allegations in the statement of claim are not sufficient to show waiver by the defendant.    We do not think it is necessary to discuss those cases, as in our opinion the principles which control the question of waiver are clearly defined by the Illinois decisions which we have cited.

It follows from the views we have expressed that

the judgment of the municipal court should be reversed and the cause remanded. Judgment will be entered here *nunc pro tunc* as of July 13, 1924.

*Reversed and remanded.*

McSURELY, P. J., and MATCHETT, J., concur.