DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEAR 1913.

John O'Connor, Executor, Appellant, v. Mrs. Belle Fox Messenger et al., Appellees.

## Gen. No. 5,783.

1. ASSIGNMENTS, § 36*—*when evidence sufficient to show transfer of title to funds in bank.* On bill in equity by a conservator to recover money deposited in bank by ward before becoming insane and withheld by bank because the deposits were claimed by another, evidence *held,* to show that the ward had transferred the title to the deposits to such person in consideration for services rendered.

2. ASSIGNMENTS, § 37*—*when possession of pass book evidence of ownership of deposit.* Possession by a person of a depositor's savings pass book is evidence tending to show that it was delivered to him and that he owns the fund.

3. INSANE PERSONS, § 76*—*necessity of amendment of pleadings in suit by conservator when ward dies before hearing.* On bill by conservator when ward dies testate before the hearing, and such conservator is executor of the will, there should be a supplement or an amendment both to the bill and to the cross-bill setting up the death of the ward and the appointment and qualification of the conservator as executor and that he thereby became the representative of the ward's personal estate.

4. EQUITY, § 242*—*when leave to amend pleadings, not an amendment.* The rule at law that leave to amend does not constitute an amendment applies in equity.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

(1)

5. Appeal and error, § 1079*—*when appellee cannot complain of decree.* A bank made a defendant in a bill to recover money deposited with it cannot complain that it is not sufficiently protected by the decree where it failed to file a cross-bill of interpleader and has not assigned cross-errors.

6. Appeal and error, § 1488*—*when errors in admission or exclusion of evidence, harmless.* Errors in rulings upon the admission or exclusion of evidence on the hearing of a chancery case are unimportant when there is competent evidence in the record sufficient to support the decree. In such case the presumption is that the chancellor in rendering the decree will only regard that which is legal and competent and will disregard all that is immaterial and incompetent.

7. Appeal and error, § 1677*—*when failure to amend pleadings, waived.* Failure to amend pleadings to show that complainant is made executor is waived where question is not raised in trial court and both parties are at fault.

8. Appeal and error, § 1078*—*necessity of cross-errors.* A ruling denying relief prayed in appellee's cross-bill cannot be considered when no cross-errors assigned.

Appeal from the Circuit Court of Will county; the Hon. Charles B. Campbell, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913. Opinion modified and rehearing denied October 9, 1913. *Certiorari* denied by Supreme Court (making opinion final).

C. W. Brown and O'Donnell, Donovan & Bray, for appellant.

Benjamin Olin and Robert A. Childs, for appellees.

Mr. Justice Dibell delivered the opinion of the court.

The pleadings disclose that Lydia A. Turner married Christopher C. Robinson in 1852; that he died in 1872, leaving to his widow, Mrs. Lydia A. Robinson, a large estate, which, at the time of her subsequent death, amounted to over $100,000, consisting of the home in Lockport, in Will county, and of quite a number of lots of land in Chicago and in Lockport upon which it is implied that there were buildings which produced an income, and of moneys loaned upon real estate se-

curities; that on December 16, 1902, she deposited $300 in the savings department of the Illinois Trust & Savings Bank of Chicago, Illinois, and said bank then issued to her a depositors' savings pass book No. 328,976, which book showed said deposit; that on July 6, 1903, she deposited an additional sum of $800 which was entered upon said pass book; that on April 18, 1906, $100 additional was so deposited, and on the same day certain other entries were made and papers were signed which authorized her niece, Mrs. Belle Fox Messenger, to draw said moneys; that none of said deposits or the interest thereon have ever been drawn out; that on December 20, 1909, when Mrs. Robinson was about eighty-three years of age, she was adjudged insane by the County Court of Will County, and that on or about December 31, 1909, John O'Connor, who had loaned her money for many years, was appointed conservator of her estate. On April 18, 1910, O'Connor, as such conservator, began this suit by filing a bill in equity against Mrs. Messenger and the Illinois Trust & Savings Bank (to which bill he did not make Mrs. Robinson a party), in which he alleged the issuance of said pass book to Mrs. Robinson, the deposit by her of said three sums of money in said bank, and that Mrs. Messenger had taken possession of said pass book and refused to deliver it to the conservator, and that she claims that, by way of gift, equitable assignment or otherwise, she is the owner of said several deposits and the accumulated interest thereon, and has the right to draw said fund and appropriate it to her individual use; and that she has applied to said bank for the payment thereof to her. The bill alleged that Mrs. Messenger was not the owner of any part of said fund, had no valid title thereto, and no right to the payment thereof from said bank, and that by reason of the claim set up by Mrs. Messenger the bank refused to pay the conservator the money. The bill asked a decree that Mrs.

Messenger had no interest in the deposits or the interest thereon, and that the bank pay the same to the conservator. Mrs. Messenger filed an answer and a cross-bill, in each of which she alleged with much fullness of detail that Miss Turner lived many years with the father and mother of Mrs. Messenger, when the latter was a child in Ohio, and afterwards removed to Will county and married Mr. Robinson, and afterwards invited her said niece, Belle Fox (now Messenger), to come and live with her at Lockport, and that she did come and live there several years, that Mrs. Robinson was childless and had a large estate, and that, after cross complainant had resided as a member of Mrs. Robinson's family from time to time for many years, on or about March 16, 1889, when Mrs. Robinson was sixty-three years of age, an arrangement was made between them that her said niece should come and live with Mrs. Robinson at her home in Lockport for the rest of her life, and should serve Mrs. Robinson by being her companion and caring for her personal wants and for her household and property affairs and interests as might be needed and required, and that for such services and care Mrs. Messenger should be adequately compensated, and should have a permanent home in the dwelling house as long as she lived, and that Mrs. Robinson should board and lodge Mrs. Messenger, provide her with means to procure proper and suitable clothing for her personal use, and provide her in addition, during the continuance of such service, $200 per annum for her personal use, to be her own to do with as she should please, and besides that Mrs. Robinson would otherwise help and do for Mrs. Messenger; and that, pursuant to the agreement then made, Mrs. Messenger did make her permanent home with Mrs. Robinson in said dwelling house, and at the time of the commencement of this litigation had so served Mrs. Robinson for over twenty-one years and had cared for Mrs. Robinson's personal health, house-

hold affairs and property interests, and that Mrs. Messenger's services were of great value to Mrs. Robinson; and that, up to the adjudication of insanity, Mrs. Robinson had provided Mrs. Messenger with lodging, board and household privileges, and had from time to time furnished her with money, but not sufficient to amount to the reasonable expense of her wearing apparel, and that the $200 per annum was left unpaid. The answer and the cross-bill each also set up the issuance of this pass book and the deposits by Mrs. Robinson, except that it averred that the last deposit of $100 was made by Mrs. Messenger with money which was theretofore her own; and said answer and said cross-bill each set up the facts hereinafter mentioned about the changes made on April 18, 1906, and averred that it was intended by Mrs. Robinson and by Mrs. Messenger that the acts then performed should transfer to and vest in Mrs. Messenger, the title to and ownership of said deposits of money and interest thereon, and that this was intended by Mrs. Robinson and Mrs. Messenger to apply on the compensation to be paid by Mrs. Robinson to Mrs. Messenger for services, and to be in addition to the said sum of $200 per year promised as aforesaid, and was intended by both to be an investment for the benefit of Mrs. Messenger.   Mrs. Messenger therein averred that she left the money in the bank as a small investment for her future wants, and that if Mrs. Robinson had remained sane her agreements would have been carried out, but that the conservator had notified the bank not to pay Mrs. Messenger any part of said deposit.   The cross-bill, to which O'Connor and Mrs. Robinson and the bank were made defendants, prayed that Mrs. Messenger be decreed to be the owner of said pass book and of said deposit and that the bank be decreed to pay the same to her with interest; and it also prayed that the conservator perform the other undertakings and promises of Mrs. Robinson in

favor of Mrs. Messenger, and pay and discharge the indebtedness due from Mrs. Robinson to Mrs. Messenger, and remaining unpaid, for services so rendered. The cross-bill was answered by the conservator and its chief material allegations were denied. The bank answered the bill and the cross-bill, admitting that it held the funds and asking that it be protected in paying them out. There was a hearing and a decree dismissing the original bill for want of equity, granting the prayer of the cross-bill as to the deposit in the bank, and denying the other relief prayed for in the cross-bill on the ground that it was not germane to the matters properly before the court, but without prejudice to the cross complainant. Prior to this hearing, Mrs. Robinson had died, testate, and O'Connor was the executor of her will, and had been ordered substituted as complainant in his capacity as executor. As such executor, he appeals from said decree.

In one respect the proceedings seem to us irrgular. Under the case stated in the bill, O'Connor's right to recover the personal estate of Mrs. Robinson was based upon his appointment as conservator of the estate. Her death terminated that right. So, too, he was defendant in the cross-bill because, as conservator, he represented her personal estate, and at her death he ceased to represent it. We conceive that there should have been a supplement or an amendment, both to the bill and to the cross-bill, setting up the death of Mrs. Robinson and the appointment and qualification of O'Connor as her executor and that he thereby became the representative of her personal estate. O'Connor did suggest the death of Mrs. Robinson and obtained an order that he, as executor of Mrs. Robinson's will, be substituted as complainant in the bill of complaint. But no amendment was in fact made. At law, leave to amend does not constitute an amendment. *Wisconsin Cent. R. Co. v. Wieczorek*, 151 Ill. 579; *Sinsheimer v. Skinner Mfg. Co.*, 165 Ill. 116; *West Chicago St. R.*

*Co. v. McCallum,* 169 Ill. 240; *Landt v. McCullough,*
206 Ill. 214, 223. We conceive that the same rule must
apply in equity. But the question was not raised in
this court, and both the complainant and the cross
complainant are equally at fault, and each has argued
the case here as if O'Connor's position as executor and
representative of the personal estate had been prop-
erly pleaded, and we conclude the defect is waived.

Mrs. Messenger became a witness in her own behalf.
Numerous objections were made to her testimony by
counsel for the executor. Some of these objections
were sustained, but as to most of them she was per-
mitted to answer subject to objection or the ruling on
the objection was reserved, and a motion to exclude
certain parts of her testimony was made and the ruling
on that motion was also reserved, and no ruling there-
on was afterwards requested or made. It is con-
tended that the court erred in not ruling upon these
objections, and that, where the court did not rule, it
must be assumed that the court considered the testi-
mony as competent, and that this was reversible error.
Mrs. Messenger was not competent as a general wit-
ness in her own behalf. She was competent as to sev-
eral matters. O'Connor testified to conversations he
had with her, both before and after he qualified as con-
servator, and she was competent to testify to the same
conversations. Mrs. Messenger took the deposition
of John W. Knight, assistant cashier of the bank and
in charge of its savings department, and on cross-ex-
amination the conservator proved by him a conversa-
tion with Mrs. Messenger in which he testified that
Mrs. Messenger told him that Mrs. Robinson had given
her this money. At the hearing the executor offered
this deposition in evidence in his own behalf, evidently
because his counsel intended to argue that if this pass
book and fund was a gift to Mrs. Messenger she could
not recover it under the allegations of her answer and
her cross-bill because of variance. This made the depo-

sition complainant's proof, and authorized Mrs. Messenger to testify, giving her version of that conversation. But, in some respects, Mrs. Messenger gave testimony which was not competent, in answer to questions as to which the ruling was reserved, and upon which no ruling was subsequently made. By a long series of decisions it is held that errors which may have been committed in rulings upon the admission or exclusion of evidence on the hearing of a chancery case are unimportant, if there is competent evidence in the record sufficient to support the decree; and that the presumption is that the chancellor, in rendering a decree, will only regard that which is legal and competent and will disregard all that is immaterial and incompetent; and that if the competent evidence sustains the decree, it must be affirmed, whether the chancellor was right or wrong in his views as to the competency of the evidence at the hearing. *Riehl v. Riehl,* 247 Ill. 475; *Kennard v. Curran,* 239 Ill. 129; *Oswald v. Nehls,* 233 Ill. 438; *Shedd v. Seefeld,* 230 Ill. 118; *Heintz v. Dennis,* 216 Ill. 487; *Griffeth v. Griffeth,* 162 Ill. 368; *Goelz v. Goelz,* 157 Ill. 40. No error appears in the ruling or lack of ruling by the court upon the evidence of Mrs. Messenger.

The cross-bill alleged an indebtedness from Mrs. Robinson to Mrs. Messenger for services for many years and asked an allowance therefor, and there was proof of the value of said services, but relief was denied on every subject except the ownership of the fund in the bank in Chicago, and no cross-errors have been assigned, and therefore those matters, and the evidence concerning them, are not before us for consideration, except as they may throw light upon the transactions relating to the pass book.

There was much proof introduced by Mrs. Messenger, by people who were at the house frequently and by others who were there occasionally and by relatives who visited there from time to time, to the effect

that for many years Mrs. Messenger acted as the housekeeper and really managed the house in the old age of Mrs. Robinson, that Mrs. Messenger often, when they could not get competent help, did all the housework; that she attended to the furnace in the basement; that she nursed Mrs. Robinson when ill; that she acted as her agent and was frequently sent away by Mrs. Robinson on business errands; that Mrs. Messenger attended to the repairing of the home and was seen house cleaning and that Mrs. Robinson said that Mrs. Messenger was her housekeeper, and acted as her agent in her business affairs, and that she could not keep house without Mrs. Messenger. There was no contradiction to this proof, and it established that Mrs. Messenger rendered valuable services for Mrs. Robinson during a long period of time and up to the time when Mrs. Robinson was adjudged insane and a conservator was appointed, when apparently a controversy arose between Mrs. Messenger and a Mrs. Bartlett, whom Mrs. Robinson had raised from the time when she was a little girl until she married and moved away, as to the control of the person of Mrs. Robinson, in which Mrs. Bartlett seems to have been successful, and Mrs. Robinson was taken to the home of Mrs. Bartlett in Cook county and died there on or about October 23, 1911. There was evidence or statements by Mrs. Robinson to the different witnesses that she was going to do well by Mrs. Messenger; that she had already done something for her; that she would see that Mrs. Messenger was paid for this; that she could not expect Mrs. Messenger to give up her home and live with Mrs. Robinson without some compensation; and that she gave her $200, or more than $200, each year to have and to hold for her own use to do as she pleased with, and that she would provide well for her. When all this evidence is considered, it would seem that it is clear that compensation was intended between Mrs. Robinson and Mrs. Messenger, and that this intention covered many of the later years of Mrs. Robinson's

life. This proof distinguishes this case from those relied upon by appellant, and brings it within the principles applied in *Heffron v. Brown*, 155 Ill. 322, and *Neish v. Gannon*, 198 Ill. 219. The pass book was issued on December 16, 1902, when Mrs. Robinson deposited $300 and signed the card agreeing to the by-laws and regulations of the bank. The second deposit was $800 on July 6, 1903. Under the date of April 18, 1906, a second card, known as a blue card, was signed by Mrs. Messenger, reading as follows, and being the same language used in the card signed by Mrs. Robinson, when she first opened the account: "I hereby agree to all the by-laws and regulations of the Illinois Trust & Savings Bank, as the same appear in the savings pass book this day issued to me by said bank, and I sign this card for the purpose of evidencing my assent thereto, with the same effect as though I had signed the signature book containing said by-laws." On the back of said blue card was the following, dated the same day and signed by Mrs. Robinson: "Illinois Trust & Savings Bank, Chicago. I hereby authorize Mrs. Belle F. Messenger to sign receipts or orders for payment on my savings account with you No. 328,976." Mrs. Messenger testified that Mrs. Robinson and herself were present on that day, and that after these papers were signed Mrs. Robinson delivered the book to her to keep as her own; but she was not competent to testify on that subject. It appears, however, by the evidence of Knight, that the writing on both sides of this blue card, except the signatures, is in the hand of a certain young lady clerk of the bank. It is a fair inference from all the circumstances shown by the competent evidence that both sides of the blue card were filled up and were signed at the same time and in the bank, and that both Mrs. Robinson and Mrs. Messenger were present. The paper so signed by Mrs. Messenger speaks of the pass book as having been that day issued to her by the bank. It is obvious that any

O'Connor v. Messenger, 183 Ill. App. 1.

one of several things may have been intended by Mrs. Robinson and by Mrs. Messenger when the transaction was put in this form. It may have been intended to enable Mrs. Messenger to draw money as the agent of Mrs. Robinson at times when Mrs. Robinson was unable to go to Chicago to draw the money herself. It may have been intended merely to enable Mrs. Messenger to draw money for her own use if she needed to and desired it. It may have been intended to transfer the entire fund and the title thereto to Mrs. Messenger, but leaving with Mrs. Robinson the privilege of drawing the money if she desired. This proof is supplemented by two things: First, Mrs. Messenger was in possession of this pass book when this suit was begun, and had asserted title to it ever since the conservator was appointed, and this possession was evidence tending to show that it had been duly delivered to her and that she owned it. *Ransom v. Jones,* 2 Ill. (1 Scam.) 291; *Curtiss v. Martin,* 20 Ill. 557; *Reed v. Douthit,* 62 Ill. 348; *Griffin v. Griffin,* 125 Ill. 438; *Martin v. Martin,* 174 Ill. 371; *Dunlop v. Lamb,* 182 Ill. 319. While she may have taken it from her aunt without right or authority, or may have held it as her aunt's agent and wrongfully appropriated it as her own when her aunt became insane, yet that will not be presumed in the absence of any evidence, and especially not when Mrs. Robinson had caused the account to be placed in such a condition that Mrs. Messenger could draw it all-at any time, without making any claim of ownership, and Mrs. Robinson did this at a time when she was in full possession of her mental faculties. If Mrs. Robinson intended by what was done with the pass book, either to transfer the fund to Mrs. Messenger as partial compensation for her services or as a gift to her, the effect would be a complete transfer of the deposit. *Martin v. Martin,* 174 Ill. 371. We had occasion to discuss what amounts to a transfer of such a fund in *Moore v. Brandenburg,*

179 Ill. App. 253, in which case the Supreme Court denied a certiorari at its June Term, 1913. Second, James Fox, a brother of Mrs. Messenger, who lives in Ashtabula, Ohio, testified that he visited his aunt, Mrs. Robinson, at her home, in January and February, 1909, and that on one occasion during that visit, Mrs. Robinson said to Mrs. Messenger: "Now James is here, I want you to go down to the city and draw that money out of the bank and use it as you see fit. It is yours to do as you have a mind to do with;" and further said that she wanted the witness, James Fox, to know that the money was there in that bank for his sister to use, to do with as she was a mind to; and the witness further testified that the bank referred to was the Illinois Trust & Savings Bank. On cross-examination he gave the language of Mrs. Robinson as follows: "Now James is here, you go down to the city, to the Illinois Trust Bank, and draw that money out and just do with it as you see fit. It is yours to do as you are a mind to with;" and that she further said that she wanted the witness to know that the money was in the bank; and that Mrs. Messenger replied that she did not want to use the money, but wanted to save it. This testimony obviously referred to the money evidenced by this pass book, and is uncontradicted, except so far as it may have been weakened by the cross-examination. If the chancellor believed the witness, it is clear that this fund had been transferred by Mrs. Robinson to Mrs. Messenger.

The executor contends that inasmuch as the answer and cross-bill set up that this pass book and fund was delivered to Mrs. Messenger to apply upon her compensation for her services, under a contract made on or about a certain date in 1889, and as no such express contract was proved, and there was proof of language by Mrs. Messenger tending to indicate that it was a gift from Mrs. Robinson, therefore the decree cannot stand. The original bill by O'Connor raised the ques-

tion whether Mrs. Messenger was entitled to the fund either by gift, equitable assignment or otherwise, and denied that she had any such title, and if the pass book and the fund was a mere gift the original bill was properly dismissed.

If Mrs. Robinson had been restored to the right use of her mental faculties, Mrs. Messenger would have been a competent witness, and it is fair to assume that she would have testified to such a contract as the cross-bill alleged, but while Mrs. Robinson was not of sound mind, Mrs. Messenger could not so testify, and when Mrs. Robinson died the capacity of Mrs. Messenger to testify to such a contract was at an end. When the allegation was made in the pleading, it was possible that Mrs. Messenger might yet become a competent witness by the restoration of Mrs. Robinson's mental faculties. We do not think that because the exigencies of Mrs. Robinson's insanity and death destroyed Mrs. Messenger's capacity to testify to the contract and she apparently had no other means of proving it by a witness testifying from positive knowledge, therefore she should fail in this suit. The proof is that she did render valuable services through a long series of years; that Mrs. Robinson intended to compensate her and had been compensating her, and took such steps as to authorize Mrs. Messenger to draw this money, and that she intended Mrs. Messenger should draw it and wished her to draw it; and we think it fair to assume from all the circumstances that she placed Mrs. Messenger in possession of the pass book, evidencing the fund; and the proof is that Mrs. Robinson directed Mrs. Messenger to draw the money for Mrs. Messenger's own use. While it is true that there is testimony that Mrs. Messenger said her aunt had given the pass book to her, yet Mrs. Messenger denied that she used that word; but if she did, it is not to be presumed that she was specially choice in the use of language, and she might not distinguish between hand-

ing her the pass book as her own and giving it to her as her own, and might not distinguish between handing it to her as compensation and giving it to her as compensation. Indeed, O'Connor in his testimony use the word "give" in the sense of "hand over" or "deliver." While the cross-bill sets up an express contract to compensate for services, which contract Mrs. Messenger did not prove by positive testimony, it also sets up that Mrs. Messenger owns the pass book and the fund, and we conclude that the allegations on that subject, and the proofs of the facts above stated, are sufficient to support the decree.

The bank asserts that it is not sufficiently protected by the decree. It could have filed a cross-bill of interpleader and asked and obtained an order to pay the money into court. It preferred the use of the fund. It has not assigned cross-errors.

It is in no position to complain of the decree.

The decree is therefore affirmed.

*Affirmed.*