## Harold Yost, Administrator, Appellee, v. Anna L. Eckart, Executrix, Appellant.

### Gen. No. 6,381.

1. BILLS AND NOTES, § 440*—*what is not proof of allegation as to mistake in name of payee.* The averment in a declaration, in an action upon a promissory note made payable to a name other than the plaintiff's and not indorsed, that such name was a mistake and that plaintiff's name was intended, was a material allegation required to be proved, and was not proved by plaintiff's mere possession of the note.

2. BILLS AND NOTES, § 319*—*what is right of action on note in possession payable to order.* The mere possession of a promissory note payable to the order of a person named which has not been assigned in blank or to the plaintiff does not entitle him to recover thereon in his own name under the common counts in assumpsit.

3. BILLS AND NOTES, § 350*—*when unnecessary to verify plea by affidavit.* A defendant may deny his liability under a promissory note executed by him and made payable to his own order but not indorsed without verifying his plea by affidavit.

4. BILLS AND NOTES, § 23*—*what is sufficient signature to note.* The maker of a note cannot deny its execution, even though the signature was not written by his own hand, if it was written in his presence with his approval by his agent or clerk.

5. WITNESSES, § 118*—*when daughter of deceased may testify in action on note executed by him.* The daughter of a decedent was a competent witness, in an action upon a promissory note executed by him, as to the circumstances under which he executed it where he left a will by which he gave all his property to her mother, as she was not an interested witness.

6. BILLS AND NOTES, § 431*—*what evidence is admissible to show mistake as to name of payee.* Testimony as to conversations preceding the signature of a promissory note by the maker for the purpose of showing whether the payee's name was a mistake and another name was intended was competent under an issue as to that fact raised by allegations in the declaration and plea of general issue.

7. BILLS AND NOTES—*when evidence shows that note was not made payable by mistake to named payee.* Evidence *held* sufficient to show that the note sued on was not made payable by mistake to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Yost v. Eckart, 209 Ill. App. 30.

the order of the payee named therein, the maker thereof, and that it was not intended to be made payable to the order of plaintiff.

Appeal from the Circuit Court of La Salle county; the Hon. Edgar Eldredge, Judge, presiding. Heard in this court at the October term, 1916. Reversed with finding of facts. Opinion filed February 12, 1918. *Certiorari* denied by Supreme Court (making opinion final).

Browne & Wiley and Stead, Woodward & Hibbs, for appellant.

Butters & Clark, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

On August 31, 1914, Harold Yost, as administrator of the estate of Louis Eckart, deceased, recovered in the Circuit Court of La Salle county a judgment by confession against John Eckart upon a judgment note, which, omitting the power of attorney, is as follows: "$5,000.00.                    Mendota, Ill., May 25, 1912. 2 years after date, value received I promise to pay to John Eckart or order Five Thousand Dollars, at the.....................with 4 per cent. interest per annum from Date.

✻     ✻     ✻     ✻     ✻     ✻     ✻     ✻     ✻

○                         John Eckart    (Seal)
                        Per Nel Eckart   (Seal)

P. O. Mendota, Ill."

Thereafter John Eckart obtained an order of court opening the judgment and giving him leave to plead. As shown above, the instrument was signed by John Eckart and was payable to his order, and it was not indorsed. The declaration contained this averment on that subject:

"in and by which note the said defendant by the name, style and description of John Eckart, per Nel Eckart, promised to pay to the order of the said plaintiff's intestate, by the name, style and description of John Eckart, the name 'John' instead of 'Louis' being

contained in the name of the payee of said note by mistake caused by using a printed form containing the name 'John Eckart' as payee.''

Defendant pleaded the general issue. Thereafter he died. By leave of court plaintiff amended said declaration by substituting as the defendant Anna L. Eckart, executrix of the estate of John Eckart, deceased, and by adding the common counts. An order was entered that the plea of the general issue stand to the declaration as amended. A jury was waived, the cause was tried and plaintiff had a judgment for $5,750, and costs, to be paid in due course of administration. This is an appeal by the defendant from that judgment. We reversed the judgment and afterwards granted a rehearing.

Upon the trial plaintiff introduced the note in evidence and proved that he found it among the papers of Louis Eckart after the decease of the latter, and that after the funeral, in the presence of the children of deceased, he opened a receptacle kept by the deceased, and produced therefrom, among other things, an envelope containing a number of promissory notes, including the instrument here sued on, and an account book in the handwriting of deceased, in which were set down a list of many notes given by various persons, and stating in each case the date and amount, and containing, among other things, the name of John Eckart, and a note for $5,000, dated 20 days earlier than the note here sued on. A list of the notes in the envelope was made out and the list of notes in the book was read over in the presence of the children, including John Eckart, and none of them made any remark. This was the substance of all the evidence offered by plaintiff.

The averment in the declaration that the name to which the note was payable was a mistake and that something else was intended was a material allegation, and was required to be proved in order to make a case

under the special count of the declaration. Plaintiff relies upon the possession of the note by the deceased at the time of his death. That possession was evidence tending to show that the note had been delivered to him and that he owned it, under the authorities cited by us in *O'Connor v. Messenger,* 183 Ill. App. 1, but that does not prove the allegation above quoted from the special count. *Chenot v. Lefevre,* 8 Ill. (3 Gilm.) 637, was similar, and it was held there that such an averment might be made in the declaration, but that it was necessary to prove it, and to prove that the plaintiff was the person intended as payee, and that that was a material allegation, and was not established by the mere fact that plaintiff had possession of the note. In *Bonner v. Gordon,* 63 Ill. 443, Bonner alleged that the note sued on was payable to himself by the name and style of The First National Bank of Centralia. It was held that this averment would not be proved by the mere production of the note, and that the note on its face raised no presumption that it was made payable to Bonner by the name mentioned in the declaration, and that that allegation would have to be proved on the trial. The plaintiff here, therefore, did not prove the case stated in the special count. Plaintiff also relies upon paragraph 3, sec. 9, of the Negotiable Instruments Law (J. & A. ¶ 7648), which provides that an instrument is payable to bearer when it is payable to the order of a person known by the drawer or maker to be fictitious or nonexistent or a living person not intended to have any interest in it. This instrument was drawn by John Eckart, and was payable to John Eckart or order, and was not indorsed. It was not drawn to the order of a person who was fictitious or nonexistent, for John Eckart was a real person, and the court was not authorized by the proofs introduced by plaintiff to assume or consider that it was proved that John Eckart was not intended to have any interest in it. It is a common practice for a party to

make a note payable to his own order. Said Negotiable Instruments Law, in section 183 (J. & A. ¶ 7823), expressly declares the status of such a note in these words: "Where a note is drawn to the maker's own order it is not complete until indorsed by him." This was the law before that act was passed. In *Kayser v. Hall*, 85 Ill. 511, speaking of a note payable to the order of the maker, it was said: "A note can never have any validity until the name of the payee appears upon it as an indorser." This language is quoted from earlier decisions. We so held in *Murphy v. Schoch*, 135 Ill. App. 550. We are of opinion that the mere possession of a promissory note payable to the order of a person named, which has not been assigned in blank or to the plaintiff, does not entitle him to recover thereon in his own name under the common counts in assumpsit. Therefore, we conclude that the plaintiff did not prove a case entitling him to recover in this action of assumpsit.

Defendant introduced the testimony of Mrs. Williena McDonald, to show the circumstances under which this note was executed, and to show that it was not intended to be enforceable. Plaintiff contends that this evidence was incompetent (1) because the allegations above quoted from the special count could not be contradicted by defendant, as the plea had not been verified by affidavit; (2) because Mrs. McDonald was incompetent to testify; (3) because this was an effort to vary a written instrument by what was said before it was executed, which is not permissible.

We think the objection made by plaintiff to this evidence because the plea was not verified is not maintainable. Eckert could not deny the execution of this note for though the signature was not written with his own hand, it was written in his presence with his approval, by his daughter, who acted as his agent or clerk. We think the language used in *Frankland v. Johnson*, 147 Ill. 520, is applicable. There the suit was

on a note, and it was claimed that this defense was not admissible because the plea was not verified by affidavit. In overruling this objection the court there said on p. 524: "The defendant did not claim the right, on the trial, to deny the execution of the note. He admits that fact, but denies that, as executed, it became his personal obligation. This, we think, he might do without a sworn plea." Here, defendant was not denying the execution of the note payable to his own order, but he was denying that thereby he became liable upon that note without indorsement.

We fail to see how Mrs. McDonald could be an incompetent witness. True, she was the daughter of John Eckart, who had died before the trial, but she testified orally that her father left a will, by which he gave all his property to her mother. At first this was objected to because the will itself was not produced, but afterwards that objection was withdrawn and counsel for the plaintiff also stated that the testimony of the witness on that subject was correct. Mrs. McDonald therefore has no interest in the estate of her father, and, in our opinion, she was a competent witness in this case.

Plaintiff contends that the testimony of Mrs. McDonald was incompetent because it was of conversations preceding the signature of the paper. Under many circumstances that would be a valid objection, but here plaintiff pleaded that there was a mistake in the drawing of the note, and that it was intended that the name of the payee should be Louis Eckart. That allegation was traversed by the plea of the general issue and the evidence was competent on that subject.

The evidence of Mrs. McDonald showed that her grandfather, Louis Eckart, and her father lived in the same town; that John Eckart had been for many years and was then in the harness business; that he was much afflicted with shaking palsy; that because of that affliction he was unable to write, and had for many years

required her assistance as clerk and business manager; that he had from time to time for some years borrowed money of his father and given notes therefor, which, at the time in question, aggregated about $5,000; that on the date of the day of the note, Louis Eckart came to his son's office, where his son and Mrs. McDonald were present, and said that he wished to make his son a present of these notes which he held against him, amounting to $5,000, but that he wanted some paper or memorandum to place with his other papers; that he directed Mrs. McDonald to prepare a new note for $5,000 on the printed blank notes that his son used, and to make it due in 2 years with interest at 4 per cent. per annum; that she did prepare said note on one of the said blanks, which had on it in print that it was payable to the order of John Eckart; that she then said to Louis Eckart that the note as it was written would not be collectible, and that he replied that it was exactly as he wanted it—that he did not intend it should be collected; that by his direction she signed the name of John Eckart to it; that John Eckart looked over the paper and said that he was satisfied and Louis Eckart went away with the note; that afterwards, while her grandfather still lived, she saw in her father's house the several notes her father had formerly given to Louis Eckart, aggregating about $5,000. This evidence is fuller than we have stated it, and is more fully understood by reading it in the record. It is positive and unequivocal testimony that this instrument was not intended to be payable to Louis Eckart and was not intended to be enforced or to be enforceable, and that it was a process which Louis Eckart adopted by which he gave his son all the notes then outstanding, amounting in the aggregate to about $5,000, as a pure gift, and that he did not intend that this note should take their place or ever be enforced by him or any one after him. Why he wanted such a paper to put with his other notes is not fully

explained, The inference is created by the testimony that he thought that some other person might examine his papers during his lifetime and he did not want such person to realize that he had given his son, John, these $5,000, but wished such person to see this paper calling for $5,000 signed by John and to suppose that the debt was still in existence. Mrs. McDonald was not impeached, and we do not see that her cross-examination impaired the strength of her testimony; and while it is a fact that it may be false and perjured, we do not see how the court can say so in the absence of anything casting any doubt upon it except the mere suspicion of those who lose by it, and the fact that her mother will profit by it if it is believed. We therefore conclude that the plaintiff is not entitled to recover, and the judgment is therefore reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment.

We find from the evidence that the note sued on was not made payable to the order of John Eckart by mistake; that it was not intended to be made payable to the order of Louis Eckart.